Carl L. Patton, Plaintiff-Appellee, *v.* Stella R. Patton Armstrong, Defendant-Appellant.

(No. 71-159; )

Fifth District—August 4, 1972.

Robert L. Douglas, of Robinson, for appellant.

Eagleton and Newlin, of Robinson, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The mother appeals from an order of court denying the mother's petition for modification of the divorce decree with respect to custody of the children and visitation, or visitation rights. The court heard evidence of witnesses and at the conclusion of the hearing continued the matter to permit an examination and evaluation of the father's and mother's separate homes by the Department of Children and Family Services.

After this report was received and filed, the court entered an order denying the petition, specifically mentioning in his minute and order that, having heard the testimony of witnesses "and having read the report of the Department of Children and Family Services, a copy of said report being in said court file, finds the facts as follows: * * *." From this, it is apparent that the trial court took into consideration, as though it were a part of the evidence, the report of the Department of Children and Family Services. It further appears that the court ordered this report on his motion, placed it in the file and entered his order, all without further notice to the parties. We note that prior to ordering this report at the conclusion of all of the evidence and before the filing of the report, the court said "The court finds from the testimony which has been presented here today—I can find nothing of my own to show that there should be any change at all in the custody or that the prayer of the petition should be granted."

From the foregoing it appears likely that the court would have denied the petition without the report from the Department of Children and

Family Services. However, since the action which we will take requires the reversal, we will remand the case for further consideration in light of the decisions which we reach.

Since this case has been filed here, we have had occasion to reiterate the rules governing modification of a decree relative to custody. (See *Fears v. Fears*, 5 Ill.App.3d 610, 283 N.E.2d 709.) We will not repeat these rules here.

In *Dayan v. Dayan*, 86 Ill.App.2d 358, 229 N.E.2d 568, we pointed out that it is improper for a judge to base a decision on reports or evidence that are not available to the parties or in the record. The report in the file, which is referred to by everyone as the report of the Department of Children and Family Services, is not evidence in the case. It was not introduced in evidence by any party or the court. It was simply placed in the file, presumably by the judge. Even if it had been introduced as evidence in the case, it does not constitute admissible evidence under Illinois rules of evidence. Since these reports are appearing with ever-increasing frequency in various forms of litigation, we believe it is worthy of some attention.

■■■ These reports are not official reports of any department. This is the unsworn statement, in this particular case, of some anonymous individual who lays claim to having made an investigation. While official records are admissible to prove matters contained therein, insofar as they record the acts of officials, they are not admissible to prove the acts of other persons. (See Illinois Civil Trial Evidence, 1971, Illinois Institute for Continuing Legal Education, section 4.10; *People ex rel. Wenzel v. Chicago and North Western Ry. Co.*, 28 Ill.2d 205, 190 N.E.2d 780.) On this basis police records have been denied (*Paliokaitis v. Checker Taxi Co.*, 324 Ill.App. 21, 57 N.E.2d 216), and coroners' verdicts are ruled inadmissible. *Spiegel House Furnishing Co. v. Industrial Com.*, 228 Ill. 422, 123 N.E. 606.

This report is not the report of some official charged with reporting official actions. It does not appear to have been reviewed and it does not have any official status. The report itself is a virtual classic of uselessness. The writer has recorded the information given by he, she or it in a form of pseudo-psychological lingo which makes a conclusion out of factual information. We know nothing of the qualifications of the person making the report, and, therefore, the validity of the conclusions is thereby destroyed. Another employee might find differently. There is nothing about the fact of employment by the State of Illinois which qualifies each employee to analyze the truthfulness of persons providing hearsay information, nor does the fact of employment qualify the employee to administer instant psycho-analysis. We do not permit courts to make

decisions on such an unreliable basis. If a court requires information he ordinarily would with to know the facts on which to base his own conclusions and on which to judge the validity of the conclusions of the informant.

Only a few excerpts from the report are necessary to prove the point: "Mr. Armstrong was not present for the interview, but the wife related their relationship was stable enough that she felt she could verbalize his reaction to the legal proceedings which were forthcoming;" the lady of the house it appeared "had channelled a lot of energy in clearing and refurbishing the home;" "her husband insisted her activities in the home had been up-graded and he was appreciative" (the husband was not interviewed); "they maintained a good relationship;" Mrs. Armstrong was co-operative during the interview;" "She was then vendictive [sic] regarding her former husband;" a party "had been encouraged to complete her schooling;" "she did plan on returning to high school but indicated she had never attained this goal;" "she volunteered her marital conflicts had been heavy from the inception of the marriage and she had endeavored to be a good wife and mother, but had become disillusioned the past few years;" "she had become more independent with Carl Patton and this had incited more conflicts in their marriage;" a party "was evasive;" others "had given her a lot of support in the marriage during its early years;" "she volunteered her husband was specially fond of the baby, but it did restrict their social activities;" "one does not question Mrs. Armstrong's concern;" "her activity level has never been exceedingly high and the assessment would have to be made regarding her ability to care for four children." The investigator reports that "the economic status * * * is quite stable;" "they have several hundreds of acres of land and report that they had always budgeted their money and had a large sum of money in savings" (in this regard the reporter avoided any specific inquiries with respect to earnings, income or specific property or deposits).

The tenor of the report shows a lack of trust for the court by indicating, by inference, that he would be unable to judge the facts. Thus, by giving the court primarily conclusions, the court can indicate his trust by accepting the conclusions on faith, or, if he rejects them, he is left with little or nothing to go on.

By further inference, this report reveals the reporter's confidence of intellectual superiority, and shows an infinite assumption of competence to judge the motives, hopes and aspirations of others upon the slimmest basis. Courts are required to decide controversies out of necessity to attain some manner of resolution. This is not done out of a claim of ultimate insight, but only in the belief that the system is better than the

law of the jungle. No such pressing necessity requires the investigator to become judge and jury. The request was for information, not an administrative determination.

In short, if we are to continue in the adversary system, this proof must be produced in open court by examination and cross-examination, with the court being fully informed of the qualifications to make observations or to give opinions if a legal basis for opinion evidence exists. With these experienced and, hopefully, objective observers available, the court can be better informed and thus better able to make a wise and just judgment, not just to adopt the judgments of others as his own.

The matter of the request for the change in the custody provision is also worthy of some consideration. The record reflects rather unusual circumstances. The original complaint filed by the husband asked that custody of the children be awarded to him "with reasonable rights of visitation to the defendant." To this complaint the defendant entered her appearance, consented to the entry of a decree of divorce "as is set forth in said complaint" and consented to an immediate hearing. The decree with respect to visitation said "that the defendant mother shall have the right to visit said children at reasonable times but shall not remove the said minor children from the home where they are living under the control and custody of the plaintiff." The defendant here has asked that the visitation provision be amended if she is not allowed her prayer for custody.

■■ The general rule regarding visitation was reviewed by the Supreme Court in *Rodely v. Rodely*, 28 Ill.2d 347, 192 N.E.2d 347, the court saying:

"The matters of child custody and visitation privileges rest largely in the broad discretion of the trial court, and it has been repeatedly stated that its determinations with respect thereto should not be disturbed on appeal unless a manifest injustice has been done."

In the *Rodely* case the trial court had permitted visitation to the husband. outside the presence of the wife. The wife strongly objected, making numerous vile accusations which were found to be unsubstantiated. The Supreme Court held that there was no manifest injustice in permitting visitation outside the presence of the parent with custody. Earlier, in *Zechman v. Zechman*, 391 Ill. 510, 63 N.E.2d 499, the Supreme Court had found that an absolute denial of right of visitation, not based upon facts and circumstances showing such denial was in the best interests of the child or children, would be inequitable and unjust.

■■ In the instant case the restriction of visitation was not based upon any allegations of impropriety or misconduct and was added to the decree apparently without further notice to the defendant after she had

entered her appearance confessing that the relief originally asked might be allowed. Under the circumstances here we believe that equity and good conscience require that the parent who is permitted to visit should be able to do so under some arrangement which does not require him, or her, to stay in the home of the parent having custody under this parent's watchful eye or even in his absence.

This is not to say that circumstances might not arise under which visitation should not be permitted, nor is it to say that in particular cases it might be necessary or desirable to place limitations both in time or place upon the visitation of the visiting parent. In appropriate cases it might even be necessary to require the posting of a bond to assure the return of the child, if there were a substantial basis in the evidence for believing that the child would be spirited away, concealed or taken outside the state. But we are aware of no evidence in this case indicating a need of any severe restriction. The mother resides permanently in the state and there is no evidence of disease or other impairment which would imperil the health and well-being of the children while in her company.

Under the evidence it would appear that the trial court should consider both the matters of custody and visitation in light of the guide lines which we have set forth here. Accordingly, the case is reversed and remanded with directions to the court to proceed in accordance with the foregoing.

Reversed and remanded with directions.

G. MORAN, P. J., and EBERSPACHER, J., concur.