CAROL V. HAZELWOOD, Plaintiff-Appellant, v. LOUIS E. HAZELWOOD, Defendant-Appellee.

(No. 11751; ▉▉▉▉▉▉▉▉

Fourth District—June 27, 1974.

Robert L. Silberstein, of Silberstein & Napoli, of Peoria, for appellant.

William S. Schildman, of Jacksonville, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The plaintiff wife procured a divorce through a decree dated August 1, 1969. It reflects that the parties agreed that in the best interests of the children, aged 5 and 3 years respectively, custody should be awarded to the wife. On March 9, 1970, the husband filed a petition for a change of custody from the wife to himself. On August 18, 1970, an order was entered placing the temporary custody of the children in the parents of the wife. This order stated that the parties agreed that such change was for the best interests of the children. After several hearings during September and October, on December 30, 1970, the court entered an order finding that it was in the best interests of the children that custody be changed to the husband. The wife appealed.

The critical issue is whether the finding of the circuit court determining the best interests of the children is contrary to the manifest weight of the evidence. (*Maroney v. Maroney*, 109 Ill.App.2d 162, 249 N.E.2d 871.) Here, we find that the evidence supports the court's finding. While the manner of presenting the testimony makes it difficult to state a clear chronology and pattern of living, it is clear that after the date of the decree for the divorce the wife has never seriously undertaken to provide a home for the children, or to regularly be a part of a home with them.

The record shows that under the decree for divorce the wife received a modern home in White Hall but thereafter sold it. The testimony shows that she purported to attend college in Jacksonville at the

expense of her parents, and there rented two or more homes during the latter part of 1969 and early 1970. Ostensibly, the wife procured a home in Jacksonville so that she might study in the evenings, but it appears that she dropped out of school in early 1970 to avoid being failed completely. She continued, however, to reside in Jacksonville. During the period before and after dropping out of school, there is testimony that her home was the scene of gatherings of people late at night and continuing early into the morning. There is conflicting testimony concerning drinking by minors at these affairs and smoking marijuana. The wife only denies that there was drinking on an occasion when the children were in the home.

So far as can be ascertained, the children substantially lived with the wife's parents, both before and after the order for temporary custody. They resided some 30 miles distant from Jacksonville and plaintiff saw the children only upon visits once a week and occasionally more often. There is no testimony that she took part in the daily care or providing for them.

It appears that after dropping out from the college, the wife worked for a short time at a bar, although she was paid no wages. Thereafter, she went to Peoria choosing to live in a slum area and apparently having some employment. During this time she would see the children at irregular intervals, not more often than once a week.

The wife testified that she had tried to kill herself, that her father and her then attorney persuaded her to enter a hospital for psychiatric care. She called a clinical psychologist who had treated her, as a witness. He testified that she suffered from an emotional anxiety characterized by poor mental judgment and that "she was functioning at a very hedonistic level." This was said to mean that her thinking was directed to her own wishes and needs. The psychologist testified to at least three events described in evidence which show that she exercised very poor judgment. Upon one occasion she placed the children with a person hardly known to her who took them on an unauthorized trip and was involved in an automobile accident, although the children avoided injury. He testified to another example of poor judgment in the handling of her money affairs.

The psychological prognosis was guarded in the language "that if she would follow and continue treatment" until "we determine that it should be discontinued" he believed "that the possibility of a recurrence is rather low."

Two witnesses related to the wife by marriage testified that she had not been observed to help with the daily care of the children and took them to her parents if she wanted to do something. There was, however,

testimony by witnesses who saw her from time to time in public with the children and stated that they were happy and well-adjusted.

The wife testified that 2 weeks before the final hearing upon custody she had arranged to return to her parents' home, that she would withdraw from her association with the people who had influenced her way of life and would care for the children. This planned reformation, however, was marred by the cross-examination of her father who testified that after she moved home she was away during a number of nights in the period of 2 weeks and was not at home "all of the time." Rebuttal testimony indicates that on the night prior to the final hearing she spent the night with a man with whom she had admittedly been cohabiting during 1970.

The record shows that the husband has re-married, has an adequate home and plans to obtain larger accommodations. He is employed. His present wife testified she expected to cease her employment and that she would willingly undertake to provide a home for the children and would expect to do so.

The wife argues that the evidence did not show that she was unfit as a mother. The record indicates that the position is debatable, but the real issue is whether or not she had, in fact, performed such a role. The court ruled in the aspects of the best interests of the children. Many cases have been cited. We note that in *Jayroe v. Jayroe*, 58 Ill. App.2d 79, 206 N.E.2d 266, and *Brown v. Brown*, 13 Ill.App.2d 56, 140 N.E.2d 528, the evidence was clear that the mother was, in fact, providing a home and was living with the children. In the cited *Perisich v. Perisich*, 6 Ill.App.3d 97, 284 N.E.2d 654, there was no admissible evidence showing the best interests of the children.

It is argued that the court erroneously considered a hearsay report made by a social agency. It appears that the wife's former counsel had agreed to such an investigation and the making of the report. That report is not in the record and there is nothing to suggest that the court considered such. His colloquy in ruling shows concern with matters of testimony and particularly with the evidence upon her way of life during the period since she had returned home. In the cited *Harris v. Spencer*, 86 Ill.App.2d 41, 229 N.E.2d 16, such report was the only evidence considered. In *Patton v. Armstrong*, 6 Ill.App.3d 998, 286 N.E.2d 351, there is specific reference to considering the inadmissible hearsay report.

The wife argues a claim of racial prejudice in that her regular male companion was described as a black and there was testimony she frequented taverns with mixed black or mixed patronage in Jacksonville. Nothing in the record suggests that such factors controlled the court's determination. She argued the point in the trial court at which time

judicial prejudice was disavowed. The court noted that a number of witnesses were black, including the former wife of the male associate. That witness testified that she had observed the witness' then husband staying the night at plaintiff's house in Jacksonville.

In reviewing the exercise of the court's discretion, we note that in closing argument counsel for the wife urged that the court continue the custody of the children in her, but that the court impose unspecified conditions or restrictions upon her exercise of that custody.

There is ample competent evidence that the wife's manner of providing a home and caring for the children had changed since the date of the original decree awarding custody and that such affected the welfare of the children. (*Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300.) The discretion exercised by the court in changing custody was not against the manifest weight of the evidence. *Maroney v. Maroney*, 109 Ill.App.2d 162, 249 N.E.2d 871.

The judgment of the trial court is affirmed.

Affirmed.

SMITH, P. J., and SIMKINS, J., concur.