DONALD L. VALENCIA, Plaintiff-Appellant, v. PALMETTA VALENCIA, Defendant-Appellee.

Fifth District    No. 76-200

Opinion filed March 25, 1977.

George J. Moran, Jr., of Granite City (John P. Long, of counsel), for appellant.

Alan T. Stentz, of Land of Lincoln Legal Assistance Foundation, Inc., of Madison, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal by plaintiff Donald L. Valencia from two orders of the Circuit Court of Madison County, the first denying his petition to modify a divorce decree, the second finding him in contempt for refusing to permit his ex-wife, defendant-appellee Palmetta Valencia, to exercise her visitation rights with the parties' daughter Trisha as provided in the decree.

The history of the case is as follows: On October 30, 1975, plaintiff was granted a default divorce in Madison County Circuit Court on the grounds of extreme and repeated mental cruelty. At the time the decree was entered, defendant was living in Missouri with Trisha, who was then one year old. The decree gave custody of Trisha to plaintiff. In December 1975, plaintiff sought by writ of habeas corpus in a Missouri circuit court to compel his ex-wife to surrender custody of Trisha to him. After a

hearing at which both parties appeared represented by counsel, Palmetta Valencia was ordered to deliver custody of the child to Donald Valencia. The order of the Missouri court further set out Mrs. Valencia's rights of visitation with the child.

On February 23, 1976, plaintiff filed a motion praying that the Madison County court amend its decree to incorporate the provisions of the Missouri court's order pertaining to rights of visitation. Plaintiff's motion, which was accompanied by a copy of the Missouri order and the verified consents of both parties, was granted the same day. By the terms of the amended decree, defendant was to surrender custody of the child to plaintiff on or before March 1, 1976. Subsequently, defendant was to have rights of visitation for the fourth week of every month, for six weeks in the summer, and on a reasonable number of the major holidays. On February 29, 1976, plaintiff brought Trisha back to Illinois from defendant's home in Missouri.

At no time did plaintiff seek to vacate the amended decree, nor seek appellate review of its terms. Nor was the procedure of the Missouri court in detailing Mrs. Valencia's visitation rights as part of the habeas corpus proceeding called into question. However, on March 18, 1976, less than a month after the divorce decree was amended, plaintiff went back into the Circuit Court of Madison County with a petition for a temporary injunction to restrain defendant from exercising her visitation rights. Plaintiff also sought further modification of the decree to require defendant to visit the child only in the presence of the plaintiff. Plaintiff alleged that this modification was in the best interest of the child because of the death of Trisha's sister Tammie while in defendant's care on March 7, 1974, more than a year and half *before* the parties were divorced. A temporary injunction without notice was granted on March 18, 1976. On April 13, 1976, the court dismissed the motion for modification of the decree, dissolved the injunction and denied further injunctive relief.

On April 28, 1976, plaintiff filed a petition to amend his motion to modify the divorce decree. This petition alleged, *inter alia*, that the court would not have allowed the amendment to the original decree had it first held a hearing and ascertained the "true facts"; that "the defendant is living with James McReynolds and that while Tammie L. Valencia, a natural child of the parties hereto, was in the custody of the defendant and James McReynolds the child was badly beaten and was declared to be dead on arrival at the hospital in Kansas City, Missouri * * *"; that "there are compelling reasons why the defendant should not have visitation rights which have occurred after February 23, 1976, in that the child, Trisha Valencia, had bruises on her body indicating she had been beaten when she was delivered from" defendant to plaintiff; and that "it is not in the best interest of the parties' minor child, Trisha Valencia, that the

defendant, Palmetta Valencia, be permitted to remove the said child outside the jurisdiction and control of the Court * * *."

The petition came on to be heard on May 20, 1976. Pursuant to motion by defendant, the court ruled that testimony at the hearing would be limited to events that occurred after the date of the amended decree, February 23, 1976. Plaintiff introduced evidence that on February 29, 1976, he and his girlfriend observed bruises on the child's forehead and legs, and that 10 days later he took the child to a hospital for examination and for treatment of a bowel problem. The testimony indicated that as of the date of the amended decree, plaintiff had been aware of the bruises and the fact that defendant was living with the same man, McReynolds, with whom she was living at the time of the other child's death. The court found that plaintiff had failed to show a substantial change of circumstances since February 23, 1976, and therefore denied the petition to modify the decree. The court then received an offer of proof relating to events before February 23, 1976; the court refused, however, the offer of proof to extend to events occurring before the date of the original decree—specifically, to the events surrounding the death of the other child. Although counsel for plaintiff stated at the outset of the hearing that he intended to show that his consent to the visitation provisions of the amended decree was not valid because given under duress, that was not one of the allegations of the petition to modify the decree, no attempt to introduce any evidence to that effect was ever made, and there is nothing in the record to support counsel's statement.

Acting on the advice of counsel, plaintiff continued to deny defendant any visitation with Trisha. On defendant's petition for a writ of citation to show cause, plaintiff was found in contempt of court for failure to comply with the visitation provisions of the divorce decree as amended. The court did not punish plaintiff for this contempt, finding that it was not wilful because his action was taken on advice of counsel. The court ordered plaintiff to deliver the child to defendant for one week beginning August 28, 1976, for six weeks beginning September 21, 1976, and thereafter as required by the amended divorce decree.

On appeal, plaintiff contends that the trial court erred in restricting his evidence to events after the date of the amended divorce decree; in refusing to allow his offer of proof as to the events that occurred before the date of the original divorce decree; in refusing to amend the divorce decree for a second time to require the defendant to visit the daughter of the parties only in the presence of the plaintiff; and in holding the plaintiff in contempt of court for his refusal to allow the defendant to take the child out of his presence and out of the State.

Of all the difficult human situations which a court has the duty to resolve, surely the most tragic is that in which an innocent child "becomes

a pawn in the game of bitterness and recrimination played by its divorced parents." (*Aud v. Etienne*, 47 Ill. 2d 110, 112, 264 N.E.2d 196, 197 (1970).) In addition to deciding which parent is to have the care and custody of the child, a court must, where called upon to do so, determine the visitation rights of the parent who does not have custody of the child.

■■■ In this State, the burden of making this decision falls initially on the circuit court, which has been endowed by the General Assembly with broad discretion. (See section 18 of the Divorce Act, Ill. Rev. Stat. 1975, ch. 40, par. 19.) Ordinarily, it is believed to be in the best interest of a child—the touchstone against which all the court's determinations as to visitation must be evaluated—that he or she have a healthy and close relationship with both parents. (*Keefer v. Keefer*, 107 Ill. App. 2d 74, 78, 245 N.E.2d 784, 786 (2d Dist. 1969).) Thus, we have said that "[t]he welfare of the child usually requires that the parent who does not have custody of the child be given liberal visitation rights, so the child will not be estranged from that parent." (*McManus v. McManus*, 38 Ill. App. 3d 645, 647, 348 N.E.2d 507, 509 (5th Dist. 1976).) It has been said that to deny *all* right of visitation to the noncustodial parent would be inequitable and unjust (*Zechman v. Zechman*, 391 Ill. 510, 522, 63 N.E.2d 499, 505 (1945)), but it should be kept in mind that the child's welfare, not the interests of the parents, is paramount. Visitation privileges should not be awarded or withheld as a punishment or reward to either parent (*Keefer v. Keefer; Malone v. Malone*, 5 Ill. App. 2d 425, 126 N.E.2d 505 (4th Dist. 1955)); however, circumstances might arise under which visitation should, in the best interest of the child, be denied or restricted. (See *Patton v. Armstrong*, 6 Ill. App. 3d 998, 1003, 286 N.E.2d 351, 354 (5th Dist. 1972).) We have held that, absent extraordinary circumstances, "the parent who is permitted to visit should be able to do so under some arrangement which does not require him, or her, to stay in the home of the parent having custody under this parent's watchful eye * * *." *Patton v. Armstrong*, 6 Ill. App. 3d 998, 1003, 286 N.E.2d 351, 354.

■■ Where, as in the instant case, a circuit court is called upon to alter previously established visitation rights, it need not find (as it must where a change of *custody* is sought) that there has been a material change of circumstances since the original order. Its decision is to be guided solely by what it perceives to be in the best interest of the child. (*Czerny v. LaCour*, 33 Ill. App. 3d 365, 342 N.E.2d 393 (5th Dist. 1975); *Chodzko v. Chodzko*, 35 Ill. App. 3d 357, 342 N.E.2d 122 (1st Dist. 1975); *Glass v. Peitchel*, 42 Ill. App. 3d 240, 355 N.E.2d 750 (1st Dist. 1976); *Keefer v. Keefer*.) It is well settled that the circuit court's exercise of its broad discretion in ordering alterations in visitation rights will not be disturbed on appeal unless a manifest injustice has been done. (*Rodely v. Rodely*, 28 Ill. 2d 347, 192 N.E.2d 347 (1963); *McManus v. McManus; Glass v.*

*Peitchel.*) The reviewing court's deference in such a case is justified by the fact that the circuit court had the benefit of observing the witnesses and assessing their credibility and reliability before making its crucial determination as to what visitation arrangement would be in the best interest of the child. (*Aud v. Etienne; Rodely v. Rodely.*) The burden of proving that a modification would be in the best interest of the child is, of course, on the party seeking the modification. *Keefer v. Keefer.*

■■■ After a careful review of the entire record in this case, in light of the foregoing principles, we cannot conclude that the court's denial of plaintiff's petition to modify the divorce decree resulted in a manifest injustice. Plaintiff cites a number of appellate cases in support of the proposition that he should have been permitted to bring out material facts existing at the time of the amended decree, but then unknown to the court. (*Schultz v. Schultz*, 38 Ill. App. 3d 678, 347 N.E.2d 749 (3d Dist. 1976); *Randolph v. Dean*, 27 Ill. App. 3d 913, 327 N.E.2d 473 (3d Dist. 1975); *Girolamo v. Girolamo*, 5 Ill. App. 3d 627, 283 N.E.2d 713 (5th Dist. 1972); *McDonald v. McDonald*, 13 Ill. App. 3d 87, 299 N.E.2d 787 (4th Dist. 1973).) These cases, however, are not precisely on point here, as they all involved a change of *custody*, which, as indicated above, is a more drastic procedure than a modification of visitation privileges. In *Aud v. Etienne*, 47 Ill. 2d 110, 264 N.E.2d 196 (1970), the supreme court rejected a contention by the parent who had custody that the other parent had forever forfeited visitation rights by originally abandoning the children and by failing to visit them over a considerable time thereafter. The court held that the trial court did not err in excluding evidence as to matters occurring prior to the out-of-State divorce decree: "[I]t is not the past conduct * * * that is controlling but rather the present circumstances and the present welfare of the children." (47 Ill. 2d 110, 113, 264 N.E.2d 196, 198.) The death of the parties' other daughter, Tammie, was of course a tragic event. Apparently the Missouri authorities considered the death accidental, as no charges were ever brought against McReynolds. Tammie's death occurred on March 7, 1974, long before the order of the Missouri court and plaintiff's motion of February 23, 1976, seeking amendment of the divorce decree to incorporate the visitation provisions he now attacks. We find no error in the ruling of the court below restricting evidence to events subsequent to the date of the amended decree.

The assertion of plaintiff's counsel that his consent to the terms of visitation, first in Missouri and subsequently in this State, was given under duress, is unsupported by any evidence. Under the trial court's ruling limiting the offer of proof to events occurring after October 30, 1975, the date of the original decree, plaintiff could have proffered whatever evidence he had that his consent to the terms incorporated into the

amended decree of February 23, 1976, was invalid. He proffered no such evidence. We are mindful that the provision granting Mrs. Valencia the right to visit with Trisha for one week each month is somewhat unusual. Mr. Valencia did, however, consent to it on two occasions—a strong indication, absent any evidence of duress, that the provision was not contrary to the best interest of the child. We realize also that when the child reaches school age, further modification of the visitation provisions of the decree may become necessary.

Finally, plaintiff argues that the court below erred in finding him in contempt of court because of his refusal to allow Mrs. Valencia to exercise her visitation rights. This finding is not actually in issue now, as the court neither found plaintiff in wilful contempt nor imposed any punishment: it merely ordered him to comply with the terms of the amended decree, which he now has done. Extended discussion of this question would, therefore, be fruitless. We would merely note that we do not agree with plaintiff's contentions that the visitation provisions of the decree were ambiguous and his interpretation of them reasonable.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

CARTER, P. J., and EBERSPACHER, J., concur.