# In the Matter of the Marriage of
## A., *Appellant,*
### *and*
## A., *Respondent.*

### (No. D 8734, CA 11899)

598 P2d 1258

Ira L. Gottlieb, Portland, argued the cause and filed the brief for appellant.

Marshall L. Amiton, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Father appeals an order modifying a dissolution of marriage decree eliminating his visitation rights. He contends the court erred in admitting testimony from the mother regarding the paternity of the child and that it was not in the best interests of the child to terminate visitation rights.

The parties were married in 1971. The child was born December 23, 1974, and is presently four and one-half years old. The decree of dissolution was entered July 1, 1976, and stated that "one minor child was born during the marriage." The paternity of the child was never placed in issue or questioned in the dissolution proceeding. Mother was given custody of the child subject to "reasonable visitation" by the father and father was ordered to pay $125 per month child support.

Mother remarried in 1977, and makes her home in Portland. In January, 1977, father moved to Roseburg, approximately 175 miles from mother's home. Since moving to Roseburg, father visited the child every other Saturday until March, 1978, when mother prohibited further visitation. Except for two occasions all visitation has occurred in mother's home.

Mother moved to terminate father's visitation and father petitioned for an increase in the visitation period to include every other Saturday and Sunday, one month during the summer, and certain holiday periods.

Mother believed the child was having emotional problems which she attributed to the visits of the father. She consulted a clinical psychologist. The psychologist had a number of consultations with the mother alone and saw the mother and child together on several occasions.

He testified the child was experiencing serious emotional problems. He noted the symptoms of emotional disturbance were more evident after the father's

[681]

visitation and that the child showed improvement after a lapse of the visitation period. Although he did not state that the father's visits were the primary cause of the child's emotional problems, he concluded that the problems associated with the visits contributed to intensification of the child's psychological problems. He expressed a fear that if the child's problems were not dealt with they would become crystalized as a permanent behavioral pattern. He recommended a suspension of the visitation for a period of time so the child could be treated absent the contributing factors associated with the father's visits. He counseled against allowing father to take the child for extended visitation periods until the child's emotional problems had abated.

The essence of mother's testimony was that the child exhibited symptoms of disturbance during and following father's visits. She stated that father did not have an interest in maintaining a relationship with the child, but was utilizing his visitation privileges to harass her.

Father denied mother's claims and stated that he wanted to maintain a father-child relationship because he loved the child. He disagreed with mother's conclusion that the child's problems were caused by his visits. He testified that mother had asked him to consent to adoption of the child by her present husband. He claims she is seeking termination of his visitation rights to punish him for refusal to release the child for adoption.

During the hearing mother made guarded references indicating father was not the biological father of the child. The court then asked mother if there was any question that he was the father. Mother replied that he was not. The court, over father's objection, questioned mother extensively about the conception of the child. In sum, mother testified the child was conceived while she was away from home on a business trip.

Father contends it was error for the court to allow evidence of the child's paternity in this proceeding. He argues that married parents cannot bastardize a child born after the marriage and thus the evidence was not material to any issue in the proceeding to modify the decree respecting visitation. The receipt of the evidence, he contends, was prejudicial because the trial court placed undue emphasis on the issue of paternity. For example, the court commented during the hearing: "Yes, it sits on that issue because if she wants to persist in saying he's not the father and she can satisfy me of it, I'll cut him off without any further rights in the child forever. If that's what she wants."

It is clear from the several comments by the trial court that the issue of paternity assumed critical importance in the court's analysis. On de novo review, if evidence is improperly received we may disregard it and arrive at our own conclusion based on the balance of the evidence. If we conclude the evidence is admissible, but for a different purpose than it was received by the trial court, we can analyze the evidence for the proper purpose and give it more or less weight than did the trial court.[1]

We conclude the evidence is admissible but not for the purpose of establishing the paternity of the child. ORS 109.070(1) conclusively presumes that a child born to a wife cohabiting with her husband is the child of her husband.[2] If the requirements of this statute are met the paternity of the child cannot be challenged. While the evidence is not admissible to establish the

---

[1] The trial court found mother to be a credible witness in her testimony. Ordinarily we give deference to such determinations as they effect the final decision as to the best interest of the child. However, in this case the court was preoccupied with the question of paternity and the decision to terminate visitation appeared to be largely influenced by the court's assessment of that issue.

[2] ORS 109.070(1) provides:

"The child of a wife cohabiting with her husband who was not impotent or sterile at the time of the conception of the child, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void."

true paternity of the child in order to deny father's visitation rights, it is admissible to demonstrate father's attitude toward the mother or child and to clarify his motives for visitation. Mother concluded her former husband is not the biological father of the child and imparted this information to him prior to the time his visitations began. The knowledge that mother does not consider him to be the father of the child could form the basis of an attitude toward the child which would be detrimental to the child. It is proper for the court to consider, in determining visitation, whether father is motivated by love for the child and a desire to maintain a parent-child relationship or is merely harassing and annoying his former wife, *see Crowell v. Crowell*, 184 Or 467, 198 P2d 992 (1948), and whether mother is motivated to deny visitation because of her concern for the child or because she does not want the father to visit.

Although the evidence may be a basis for determining father's attitude toward the child, we conclude from the entire record that father has a genuine affection for the child and a desire to continue a father-son relationship. Courts of equity recognize the natural rights of a parent to visit his child. This parental right to visitation must be balanced with the best interest of the child. If the visitation is detrimental to the child, the right of visitation must be subordinated to the child's welfare.

■  Father's visitations contribute in some measure to the psychological problems of the child, but we are not convinced that permanent termination of father's visitation rights is warranted. The psychologist recommended suspension of father's visitation privileges for a period of time in order to facilitate treatment of the child's emotional problems. He also recommended that father not have the child for extended periods of time for visitation. Father has not visited the child since March, 1978. This period of time is consistent with the psychologist's recommendation and we conclude

father's visitation rights should be reinstated upon remand.

■ The court has continuing jurisdiction to determine if visitation, once resumed, is in the best interest of the child and to determine if the father's visits are causing or exacerbating the child's emotional problems. We recognize that this may foster further litigation to adjust or terminate visitation rights. However, this is an acceptable price to pay in order to accommodate father's interest in the child and at the same time guard against permanent damage to the child. As a practical and legal matter the court cannot supervise the rearing of the child. It is hoped the parties, who are intelligent adults, can subordinate their animosity toward each other and cooperate in the physical and emotional nurturing of the child.

Father petitioned for an increase in visitation rights to include visits for one month during the summer and certain holidays. We conclude that this is inadvisable at this time. Accordingly, the order of the court terminating father's visitation rights is reversed and the case is remanded with instructions to modify the decree to allow father visitation. If the parties cannot agree on a visitation schedule, the trial court is instructed to set the schedule of visitation.

Reversed and remanded with instructions to modify the decree in conformance with this opinion. No costs to either party.