*In re* MARRIAGE OF NANCY SOLOMON, Petitioner and Counterrespondent-Appellee, and MARVIN SOLOMON, Respondent and Counterpetitioner-Appellant.

First District (2nd Division)   No. 79-679

Opinion filed May 27, 1980.

Kirsh, Madler & Berman, Ltd., of Chicago (Arthur M. Berman and J. Scott Bonner, of counsel), for appellant.

Barry S. Grossman, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Sixteen months after the entry of a judgment of divorce, Nancy Solomon, petitioner, brought this action to modify the terms of the agreed visitation. Marvin Solomon, respondent, counterpetitioned for a modification of custody and for court-ordered psychiatric treatments for their daughter. Following the trial court's action denying respondent's petition and granting petitioner's request for a reduction in respondent's visitation privileges, Marvin Solomon took this appeal. He contends the trial court erred in refusing to order psychiatric counseling for the child and in substantially reducing respondent's visitation privileges.

As a part of the divorce judgment, petitioner and respondent entered into an agreement covering not only property distribution and monetary

settlement but also each aspect of child visitation privileges accruing to respondent. The agreement specifically detailed each possible situation from which a right to visitation might arise and set out, as its first provision, that respondent should be entitled to maximum visitation with the child outside the home. Other sections delineating the scope and nature of the visitation provided for:

(1) Vacation periods, not to exceed 14 days;

(2) One phone call a day;

(3) Consultation with respondent about the child's school activities and reports on non-school activities;

(4) Respondent's participation in school conferences;

(5) Notification of medical emergencies and respondent's participation in decisions concerning child's needs;

(6) Respondent's obligation to pay college costs and right to participate in school selection;

(7) Visitation on:

Wednesday evenings;

alternate Saturdays and Sundays of each week;

one weekend each month from 6 p.m. Friday to 9 p.m. Sunday;

Respondent's birthday and Father's Day;

in alternating years, the child's birthday;

in alternating years, the following holidays;

| | |
|---|---|
| New Year's eve and day | Labor day and eve |
| Easter eve and day | Halloween eve and day |
| Memorial eve and day | Thanksgiving eve and day |
| Good Friday | Christmas eve and day |
| Independence eve and day | |

Jewish Holidays:

Passover (first sedar on one year, second sedar the next);

Rosh Hashana (first evening and day one year, second day the next);

Yom Kippur (evening one year, day the next);

Chanukah (first day one year, second day the next);

(8) Respondent's special family events, on a one-week written notice to petitioner;

(9) One weekend (Thursday to Sunday) a year for paternal grandparents;

(10) Child's visitation if father ill;

(11) Father's visitation if illness confined child.

Both parties signed this agreement and waived all rights of appeal. Sixteen months later, Nancy Solomon petitioned the court to curtail respondent's visitation rights, alleging, among other things, that he was telephoning with threats to harm petitioner, needlessly taking the child to

a doctor during his visitation periods rather than using the time more productively, using his telephone privileges to harass and intimidate, making late payments of the lump sum installments in lieu of alimony, and failing to produce evidence of insurance coverage. She concluded that the visitation granted respondent by their agreed settlement was of such frequency that it caused the child to be emotionally upset. Thus, she argued, the best interests of the child demanded that the visitation be curtailed to prevent the continuing destructive impact on the child.

Marvin Solomon's response to the above petition contended that the visitation schedule was an integral part of the property and monetary settlement agreement and that its particularity resulted from extensive negotiation, required because of petitioner's previous interference with respondent's attempts at visitation. Respondent denied the allegations of harassing conduct and alleged violations in the terms of the visitation agreement on petitioner's part. He agreed the child was nervous and unstable, but, contrary to petitioner's assertions, contended that petitioner's outbursts and threats to deny visitation caused the child's emotional disturbance. Respondent asked that all parties submit to psychiatric examination, that the court appoint a guardian ad litem to protect the interests of the child, and that the court award him custody of the child.

Petitioner replied, denying the allegations and adding that the outbursts were really those of respondent. Claims of mistreatment and abandonment were also made.

Judge Hunter ordered a psychiatric evaluation of the child, with the psychiatrist to be chosen by petitioner. Petitioner requested a rehearing on the order, claiming the examination would be detrimental and unnecessary because the child's behavior was "rational and complete." Her motion was denied.

Following a two-month evaluation which encompassed eight sessions with the child, six with respondent, and two with petitioner and a referral to a child psychologist for a parallel consultation, the psychiatric expert tendered his opinion, and a hearing on the petitions was held before Judge Goier. Both sides stipulated to the qualifications of the psychiatrist. He testified that the child showed signs of extreme emotional tension and that although highly guarded, most of her verbalizations and psychological expressions were of depression. She was noncommittal in regard to her feelings about her mother but verbally both critical and affectionate toward her father. The psychiatrist found that her confidence and sense of esteem were impaired, as demonstrated by her feelings of failure when she made attempts to prove herself. He stressed that the child's level of anxiety was rising as her tension mounted, leading at times to frenetic behavior. He concluded the child had several abnormal

personality traits and characteristics. Accordingly, he made the strong recommendation that the child's developmental disturbance, which probably resulted from the situation between her parents, required immediate psychological treatment on a regular continuing basis. He also stated that the consulting psychologist's findings and conclusions were consistent with his own. When asked whether he felt that the noncustodial parent's visitation should be limited or curtailed if psychological treatment were instituted, the expert replied negatively.

The court then asked him whether it would be beneficial to eliminate all visitation every other month or to alter the visitation pattern. The doctor responded that he had experimented with such a possibility during the evaluation period but felt that, unless part of a closely supervised treatment program, to deprive the child of parental contact would be a disservice and to stagger the visitation periods with increases one month and cessation the next (as suggested by the court) would be a disaster for the child. He also indicated familiarity with the terms of the visitation and felt that the child's problems did not rise from that "per se." The court asked if it was his professional viewpoint that it would serve the best interests of the child if professional help were continued by a different psychiatrist or psychologist; he responded with a strong affirmative.

The court then held an *in camera* interview with the child. Only a few general questions were asked. The court asked the child three questions about her father:

"Have you and your daddy been getting along?

I guess so.

Do you like to see your daddy every week?

Yes.

Do you love your daddy and mommy, do you—?

Yes."

The last question was the only one pertaining to the mother. The judge also asked the child one question each about her health, her participation in sports, and her grades, then concluded: "She seems to be a very normal, nice little girl."

The last witness called was the petitioner, who testified on her own behalf. She stated that she knows her daughter very well and that during the last year the child had been tranquil and happy, loving her school and her home. On cross-examination, in response to a question about the child's reaction to visitation, petitioner stated that the child "could be quite content and happy and laugh with her father if he were in an acceptable mood and he took her to acceptable places that was not a hostile environment with people that had—shall we say—emotional problems." When respondent's counsel asked if petitioner was now

stating that the child does not and did not at any time have a personality disorder, anxiety, nervousness or instability, petitioner responded that that was correct. Her attention was drawn to her initial petition which alleged the child's emotional distress as a basis for modification of visitation. Petitioner admitted that she had signed the petition.

Immediately following this testimony the trial judge denied the petition for psychological treatment "for good cause" and announced a modification of visitation. The father was given alternate weekends and alternating holidays, but the court refused to explain its ruling or to enter specific findings of fact.

A petition for rehearing was presented and argued less than a month later. Respondent asked the court to reconsider its restructuring of visitation and to allow visitation cancelled by petitioner, ostensibly because of the child's illness, to accrue. The court denied this request and stated repeatedly that the standard he used to evaluate all visitation modification was the best interests of the child. Respondent's attorney then attempted to clarify the new visitation order. The judge stated that the order included all the "eleven or twelve recognized legal holidays" and the Jewish holidays, with the parties to "work out" the details. Once again, respondent's attorney asked for increased specificity, explaining that the original agreement of the parties was so detailed because of their inability to "work it out." Petitioner's attorney responded that the petition for modification was brought because the original agreement had almost the effect of concurrent custody. The court, agreeing that the original agreement confused the child as to who was her custodian, announced the following holidays:

"I will definitely tell you that the holidays are as follows, if you want clarification.

It is New Years Eve and Day, Good Friday, Easter, Memorial Day, Independence, Labor Day. And those are the only holidays that will alternate."

He then denied visitation on the Jewish holidays, paternal grandparent visitation, and communication about health and schooling. Finally, the court, in denying the petition for reconsideration, explained that petitioner should have the right to select the child's religion and to guide the child without the detrimental visitation. The court's order specified that all previous orders pertaining to visitation were null and void, and superseded by the present modification. This appeal followed.

Both the award and modification of visitation granted to the noncustodial parent are governed by section 607 of the Illinois Marriage and Dissolution of Marriage Act:

"(a) A parent not granted custody of the child is entitled to

reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health.

(b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." Ill. Rev. Stat. 1977, ch. 40, par. 607.

This provision was taken verbatim from section 407 of the Uniform Marriage and Divorce Act. The Commissioners' Note to that section clarifies the policies behind the different standards explicitly set out in the provision:

"[V]isitation rights should be arranged to an extent and in a fashion which suits the child's interest rather than the interest of either the custodial or noncustodial parent. The empirical data on post-divorce living arrangements suggests that, if the judge can arrange visitation with a minimum of contest, most parties will eventually reach an accommodation and the bitterness accompanying the divorce will gradually fade. The section does make clear, however, that the judge must hold a hearing and make an extraordinary finding to deprive the noncustodial parent of all visitation rights. To preclude visitation completely, the judge must find that visitation would endanger 'seriously the child's physical, mental, moral, or emotional health.' * * * Although the standard is necessarily somewhat vague, it was deliberately chosen to indicate its stringency when compared to the 'best interest' standard traditionally applied to this problem. * * * *The same onerous standard is applicable when the custodial parent tries to have the noncustodial parent's visitation privileges restricted or eliminated.*" (Emphasis added.)

(Uniform Marriage and Divorce Act (9A U.L.A.) §407, Commissioners' Note (1979).)

Thus to restrict visitation rights the trial court must find that the visitation as it exists endangers seriously the child's physical, mental, moral or emotional health. Any subsequent modification is then governed by the best interests of the child. See *Crichton v. Crichton* (1979), 75 Ill. App. 3d 326, 393 N.E.2d 1319.

Our supreme court recently held that language in section 610(b) of the Act ("The court shall not modify a prior custody judgment unless it finds * * *") (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)), which substantially parallels that of section 607(b) ("the court shall not restrict a parent's visitation rights unless it finds * * *") (Ill. Rev. Stat. 1977, ch. 40, par.

607(b)), required explicit findings to be set out by the trial court. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.) The supreme court stated that explicit findings were indispensable to intelligent appellate court review of trial court judgments and exercises of discretion. (77 Ill. 2d 414, 420-21.) The judge's discretion is limited by the Act, which requires that the evidence fit the higher standard of endangerment prior to visitation restriction and that such a finding be explicitly set out before proceeding to modify in the best interests. *In re Marriage of Poston* (1979), 77 Ill. App. 3d 689, 396 N.E.2d 576.

The trial judge here repeatedly stated that he was applying a best interests standard, and although he did mention considerations of possible detriment to the child caused by the existing visitation arrangements, he did not make the explicit threshold finding of serious endangerment which would allow restriction of respondent's visitation rights. The question accordingly evolves to whether the modification imposed by the trial court was a "restriction" of respondent's visitation rights, such as to statutorily require the higher standard of proof.

■■ "Restrict" is uniformly defined as synonymous with limit, restrain, or confine within bounds. (See Webster's Third New International Dictionary 1937 (unabr. ed. 1971); American Heritage Dictionary 1109 (1976).) A comparison of the visitation provided in the parties' original agreement as against that contained in the judge's order shows the substantial limiting effect of the modification. More importantly, the modification served to alter the nature of the visitation, as aptly described by petitioner's attorney, from that of almost concurrent custody to the trial court's conception of more reasonable visitation. The standard used by the trial court (best interests) was not appropriate to the initial finding necessary for a restriction of visitation. Therefore, without the threshold inquiry of whether the visitation as it existed endangered seriously the child's physical, mental, moral or emotional health, the judge erred in restricting respondent's visitation privileges under the lesser standard of best interests of the child. Accordingly, we reverse and remand to the trial court to allow respondent a hearing with application of correct standards under the Act. See *Taraboletti v. Taraboletti* (1978), 56 Ill. App. 3d 854, 857, 372 N.E.2d 155 (which, although apparently decided under the prior enactment, recognized the two-party inquiry necessary under the new Act for restriction of visitation).

■■ Although the original agreement of the parties does not bind the trial court where the best interests of the child are contrary (*Falk v. Falk* (1979), 77 Ill. App. 3d 13, 15, 395 N.E.2d 750), it may well be pertinent to whether the father is using visitation to harass the wife or, in contrast, to maintain a close relationship with the child. The parties here have admittedly continued their acrimonious relationship beyond the

dissolution of their marriage. The petitions allege harassing conduct by both respondent and petitioner, but no evidence of such was adduced during the hearings. During the rehearing, the trial judge alluded to a dispute over the child's religious and scholastic training as one of the bases for his rulings; however, no such testimony was presented at trial. Similarly, the trial court commented on "constant harassing phone calls," of which there are also no competent evidence. It would be improper to consider allegations and statements by one of the parties which were not properly presented in evidence. (See *Seniuta v. Seniuta* (1975), 31 Ill. App. 3d 408, 334 N.E.2d 261, 268; *M.P. v. S.P.* (1979), 169 N.J. Super, 425, ___, 404 A.2d 1256, 1261; compare *Doggett v. Doggett* (1977), 51 Ill. App. 3d 868, 366 N.E.2d 985.) Indeed, other than the above comments which are unsupported by the evidence actually adduced, the testimony pertinent to the best interests of the child substantially supported respondent's continued visitation under the existing agreement. Only petitioner's conclusory testimony about the "unacceptable" places to which respondent took the child could be construed as contrary. We need not decide whether the trial judge's decision was an abuse of discretion even under the best interests standard, but we note that his questions to the psychiatrist and comments during the rehearing indicate more concern with alleviating the squabbling between the parties than with the needs of the child for visitation with her father. This emphasis, although well-meaning, is misplaced. (See *Czerny v. Czerny* (1975), 33 Ill. App. 3d 365, 342 N.E.2d 393.) The original visitation agreement, the psychiatric report, the trial judge's statements, and even petitioner's testimony all demonstrate that respondent was concerned for his child and was attempting to maintain a complete relationship. It is obvious that the child has been caught between the existing bitterness and animosity of the parties, but visitation privileges should not be used as a lever to punish or reward either parent. (*Valencia v. Valencia* (1977), 46 Ill. App. 3d 741, 745, 360 N.E.2d 1384, *modified on other grounds* (1978), 71 Ill. 2d 220, 375 N.E.2d 98.) The most practical and obvious solution would be for the parents, acting as adults, to submerge their hostility for the benefit of the child. (See *In re A.* (1979), 41 Ore. App. 679, ___, 598 P.2d 1258, 1261.) If such a reasonable alternative cannot be undertaken by the parties, perhaps the visitation can be arranged to minimize their contact and in that way lessen the confrontations. Under the new Act, the trial court may appoint a representative for the child during the hearing on remand (Ill. Rev. Stat. 1977, ch. 40, par. 506), which might also focus the inquiry on the child rather than the relationship between petitioner and respondent. See *Jines v. Jines* (1978), 63 Ill. App. 3d 564, 570, 380 N.E.2d 440 ("A third voice in the proceedings, apart from the interested litigants, could have greatly assisted the court in determining the child's best interests").

Accordingly, we reverse and remand with directions to make a finding of whether the previously existing visitation seriously endangered the child. If such a finding is made, the visitation may then be modified in the best interests of the child.

Reversed and remanded with directions.

PERLIN, P. J., and DOWNING, J., concur.