NANCY JO SARCHET, Deceased, by Catherine Candler, Plaintiff-Appellee, v. TODD WILLIAM ZIEGLER, Defendant-Appellant.

Third District    No. 3—95—0500

Opinion filed March 5, 1996.

Clayton W. Moushon (argued), of Dunlap, for appellant.

David M. Lynch (argued), of Lynch & Bloom, P.C., of Peoria, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Defendant, Todd William Ziegler, was awarded custody of his minor daughter, Shelby, following the death of the child's mother, Nancy Jo Sarchet. The circuit court entered an agreed order on October 27, 1994, awarding grandparent visitation to Shelby's maternal grandmother, Catherine Candler. Candler was given visitation on the first weekend of every month and for three hours around both Christmas and Shelby's birthday. The order provided for a review of the visitation in approximately April 1995. Following a hearing on the visitation review on June 15, 1995, the court entered an order expanding Candler's visitation rights by one week in the summer, two days at Christmas, four hours on Saturday of the third weekend of every month, and five hours on Mother's Day. Defendant appeals from the order modifying Candler's visitation rights.

Pursuant to section 607(b)(1) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b)(1) (West 1994)), a court

may award grandparents reasonable visitation privileges. The court may modify an order granting or denying visitation rights "whenever modification would serve the best interest of the child." 750 ILCS 5/607(c) (West 1994). The party seeking the modification has the burden of showing the modification is in the best interest of the child. *Lyons v. Lyons*, 228 Ill. App. 3d 407, 591 N.E.2d 1006 (1992). A trial court's determination on a motion for modification of visitation rights will not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Strang-Reynolds-Conour*, 218 Ill. App. 3d 467, 577 N.E.2d 1391 (1991). Our review of the record indicates that Candler clearly failed in her burden of proof, and thus we have no choice but to conclude that the trial court's decision was against the manifest weight of the evidence.

■ We initially note that we are giving less deference to the trial court's findings than we ordinarily would in such a case because it is clear that the trial judge failed to consider the evidence already in the record. The trial judge who presided over the hearing on visitation review had not been the judge on previous matters in the case. His questions to the attorneys demonstrated his complete lack of familiarity with what had gone on before his assignment to the case. He specifically agreed during the hearing that he would consider evidence already in the record, but he could not have done so because he announced his ruling at the conclusion of the hearing without taking the matter under advisement.

After carefully reviewing the record, we conclude that Candler failed in her burden of proof. Defendant, Candler, and Candler's husband, Earl, all testified at the hearing for visitation review regarding their past and present relationships with Shelby. In addition, Dr. Lori Russell, a psychologist, testified as to her opinion regarding the best interests of Shelby. The parties had agreed upon Dr. Russell's giving her opinion and also agreed to split her fee. Dr. Russell had been involved with the case for some time and testified that she did not believe it would be a good idea to expand the current visitation schedule. Russell believed that it was important to begin to establish stability and continuity in Shelby's life. Russell testified that it was important for Shelby to view her grandmother as a grandmother rather than as a mother, and granting more visitation would be invasive.

After listening to the testimony of the parties and Russell, the court entered an order expanding the visitation rights of Candler. Presumably, the court rejected the testimony of Dr. Russell and based its decision on Candler's wishes and the relationship Shelby had with Candler and her daughters. However, we do not believe that Candler

presented evidence that increased visitation was in Shelby's best interests. The parties had agreed on a visitation schedule only eight months before the hearing on visitation review. Although the party seeking modification of visitation rights does not need to show a material change of circumstances since the previous order (*Valencia v. Valencia*, 46 Ill. App. 3d 741, 360 N.E.2d 1384 (1977), *rev'd on other grounds*, 71 Ill. 2d 220, 375 N.E.2d 98 (1978)), we do not believe that Candler presented any evidence indicating that Shelby's best interests were not being served by the agreed order. The only significant new evidence before the court at the visitation review hearing was Russell's testimony and that testimony was adverse to Candler's position.

We also note that it has been held that grandparents whose adult children have died do not step into their deceased children's shoes with regard to visitation. *Weybright v. Puckett*, 262 Ill. App. 3d 605, 635 N.E.2d 119 (1994); *cf. McVey v. Fredrickson*, 226 Ill. App. 3d 1082, 1083, 590 N.E.2d 996, 997 (1992) ("parents are responsible for the education and support of their children, burdens obviously not placed on grandparents"). Here, the expanded visitation given to Candler is close to the type of visitation that a noncustodial parent could expect to receive: time on alternating weekends, a week in the summer, two days at Christmas, and part of Mother's Day. We do not believe the evidence before the trial court warranted such an expansion.

Because we find that the record as a whole demonstrates that Candler did not meet her burden of showing that increased visitation was in Shelby's best interests, we must conclude that the decision of the trial court was against the manifest weight of the evidence. For the reasons stated, the judgment of the circuit court of Peoria County is reversed.

Reversed.

LYTTON and MICHELA, JJ., concur.