*In re* MARRIAGE OF LeRAE M. COHENOUR, Plaintiff-Appellee, and RICHARD L. COHENOUR, Defendant-Appellant.

Third District    No. 81-161

Opinion filed November 12, 1981.

Charles R. Thomas, of Pekin, for appellant.

Robert Morel Gray and Gerald G. Kielian, both of Gray, Kleczek & Kielian, P. C., of Joliet, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Tazewell County which denied the petition of the defendant, Richard L. Cohenour, which prayed that maintenance payments which he had been ordered to make to his ex-wife, the plaintiff, LeRae Cohenour, be terminated.

The plaintiff and the defendant were divorced on May 10, 1973. The decree of divorce ordered the defendant to pay alimony to the plaintiff in the sum of $400 per month. On April 4, 1978, an order was entered increasing these payments to the sum of $510 per month. On April 8, 1980, the defendant filed a petition to terminate maintenance. The petition was brought pursuant to that provision of the Illinois Marriage and Dissolution of Marriage Act which provides:

"The obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Ill. Rev. Stat. 1979, ch. 40, par. 510(b).

This appeal presents the sole question as to whether the trial court was correct in its denial of the defendant's petition. In determining this question it is necessary that there be an examination of both the pertinent law and the evidence adduced at the hearing on the petition.

Turning our attention to the law, we concern ourselves with that portion of the statutory provision which we have cited and which reads as follows:

"The obligation to pay future maintenance is terminated \* \* \* or *if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 40, par. 510(b).

The appellate court from the Fifth District specifically addressed itself as to the meaning of the above-quoted language and made the following determination:

"We believe that this statute contemplates acts of sexual intercourse as part of the full or *de facto* husband-wife relationship which it seeks to describe. The term 'cohabitation' means living together as husband and wife, but does not necessarily imply sexual intercourse. (*Rasgaitis v. Rasgaitis* (1952), 347 Ill. App. 477, 107 N.E.2d 273.) 'Conjugal basis,' however, implies the assertion of conjugal rights which have been defined both as 'the right which husband and wife have to each other's society, comfort and affection' (Black's Law Dictionary 374 (4th ed. rev. 1968)) and 'the right of sexual intercourse between husband and wife' (Webster's Third New International Dictionary 480 (1971)). The statute further requires that the cohabitation be on a resident and continuing basis." *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 613, 388 N.E.2d 1131, 1134.

Since continuing sexual intercourse must occur between parties one of whom is receiving maintenance payments from an ex-spouse before the pertinent provision of section 510(b) is triggered, thereby eliminating the obligation to continue maintenance payments, such acts of sexual intercourse must be proved. We are aware of the fact that few couples admit to having out-of-wedlock intercourse, nor do they publicly engage in such conduct, but on the contrary, they attempt to conceal their actions. Such being the case, it has long been the rule that out-of-wedlock intercourse can be proved by circumstantial evidence. See *Zimmerman v.*

*Zimmerman* (1909), 242 Ill. 552, 90 N.E. 192, and *Wolfrum v. Wolfrum* (1955), 5 Ill. App. 2d 471, 126 N.E.2d 34.

Having set forth the applicable law, attention will now be directed to the facts presented to the trial court by testimony and evidence depositions.

LeRae and her son, Jeff, who was 15 years old in 1975, moved into a residence at 241 Sumerset in New Lenox, Illinois. The house was a trilevel structure consisting of six rooms, two of which were bedrooms. In the latter part of 1977 Al Escobedo moved into the plaintiff's residence. LeRae had met Escobedo at the Worldwide Church of God. Escobedo continued to live at the plaintiff's home up to and through the proceedings to terminate maintenance. It is uncontested:

(1) That Escobedo claimed plaintiff's home at 241 Sumerset in New Lenox as his legal residence for employment, tax, and motor vehicle registration purposes.

(2) That he paid to LeRae $25 per week to stay at the house but on occasion doubled or tripled that amount.

(3) That the payments were made in cash until February or March of 1980, being a few months prior to commencement of the termination of maintenance action. Thereafter the payments were made by check.

(4) That he (Escobedo) purchased most of the groceries for LeRae and Jeff, as well as other incidental items for the house. That on occasions he bought winter clothing for Jeff.

(5) That he permitted LeRae on occasion to use his VISA credit card.

(6) That he performed manual labor around the house such as putting up storm windows, mowing grass and tending to a garden.

(7) That he (Escobedo) on one occasion took a trip to Mexico and named LeRae as a beneficiary for a portion of the flight insurance which he had purchased.

(8) That on one occasion he (Escobedo) entered LeRae's bedroom clad in shorts and a bathrobe and that while there he reclined on the bed while petting the dog.

It was the testimony of LeRae that she was unemployed because of illness and also from injuries received from an automobile accident which occurred in 1970; that for a period she took birth control pills on the advice of a dermatologist who prescribed them for complexion problems, but that she ceased taking them in the year 1976; and that both she and Escobedo dropped their church membership, but not because of pressure from the church regarding Escobedo's residing in her home. LeRae further testified that she used the master bedroom, her son Jeff the other bedroom.

Further testimony was to the effect that when Escobedo first moved into LeRae's home he did not sleep in a bedroom but in a basement room, and that in August 1979, the son Jeff and Escobedo had a quarrel and Jeff left the home and thereafter Escobedo used Jeff's room. Jeff, who lived in the Sumerset house while 17, 18 and 19 years of age, testified that during that period of time Escobedo slept in the basement room, he never saw him other than fully clothed when in the presence of his mother.

Both LeRae and Escobedo deny that they have ever engaged in sexual intercourse. Since continuing sexual intercourse must occur between the party receiving maintenance and another party and since sexual intercourse can be proved by circumstantial evidence, we are confronted with determining whether the trial court's decision was against the manifest weight of the evidence. We believe that the decision is not against the manifest weight of the evidence. In arguing to the contrary, the defendant relies heavily on the case of *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 388 N.E.2d 1131. We believe that such reliance is misplaced, for *Halford* is clearly distinguishable from the instant case. In *Halford* the parties had lived together for three years. It was admitted by Mrs. Halford that she and Mr. Green had engaged in sexual intercourse three or four times. There was additional evidence that the couple had a close and affectionate relationship and they had been seen kissing and touching each other and there was evidence to show that they shared the same bedroom. In *Halford*, the Fifth District Appellate Court reversed the trial court's decision which denied the termination of maintenance payments.

In the instant case there is no direct evidence whatsoever of sexual conduct between LeRae and Escobedo. There is no evidence of any display of affection between the parties. They apparently did not dine out together or travel together. The sole party who possibly could have shed any light on their relationship was LeRae's son Jeff. Even though he and Escobedo had a quarrel of a nature serious enough to result in Jeff leaving the home, he testified that he had never seen any improprieties between his mother and Escobedo while living in the home. The law requires either direct or circumstantial evidence of sexual conduct before maintenance payments can be terminated. See *In re Marriage of McGowan* (1980), 84 Ill. App. 3d 609, 405 N.E.2d 1156.

For the reasons set forth the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.