JOSEPHINE ZIMMERMAN, Appellant, *vs.* JOHN ZIMMERMAN,
Appellee.

*Opinion filed December 22, 1909.*

1. DIVORCE—*proof of adultery by complainant justifies dismissing bill for divorce for cruelty.* Proof that the complainant in a
bill for divorce upon the grounds of extreme cruelty and habitual
drunkenness has been guilty of adultery justifies a decree dismissing the original bill and granting the defendant a decree of divorce on his cross-bill.

2. SAME—*adultery may be proven by circumstantial evidence.*
The offense of adultery in a divorce proceeding is regarded as
sufficiently established when circumstances are proven which raise
the presumption of cohabitation and unlawful intimacy, and a finding of the chancellor that such offense is established will not be
disturbed by a court of review unless palpably erroneous.

3. SAME—*party for whose fault the divorce is granted forfeits
interest in other's property.* Under section 14 of the Dower act,
if a divorce is granted for the fault of the wife it is proper for
the decree to deprive the wife of all interest in the property of
the husband.

4. SAME—*a decree should fix conditions for visiting children.*
A divorce decree which disposes of the custody of the minor children should provide that the parent who is deprived of their custody shall have the privilege of visiting the children, and should
fix such terms and conditions for the visits as seem proper in the
particular case, thereby avoiding the necessity of re-opening the
case to fix the terms and conditions.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court
of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

E. MEERS, for appellant.

J. J. WELLNITZ, and JOHN W. D'ARCY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On December 6, 1907, Josephine Zimmerman, the appellant, filed her bill for divorce in the circuit court of Will county against her husband, John Zimmerman, the appellee, charging him with habitual drunkenness and extreme and repeated cruelty. The bill also prayed for the custody of the minor children of the parties, that all the household furniture and chattels, and a just proportion of the real estate owned by appellee and consisting of their home, be given to her. Appellee answered the bill, denying the charges of drunkenness and cruelty, and filed a cross-bill charging appellant with having frequently committed adultery with one Charles Kreiger, and praying for a divorce and for the care and custody of the minor children. The appellant answered the cross-bill, denying the charge of adultery. A hearing was had before the chancellor upon the original bill and cross-bill and the respective answers thereto, which resulted in a decree dismissing the original bill for want of equity, granting appellee a divorce upon his cross-bill, awarding to appellee the care, custody and control of the minor children, and adjudging to him the exclusive control, possession and ownership of the real estate and all the household furniture and chattels contained in the building thereon, except appellant's personal wearing apparel and a piano belonging to an adult daughter, and ordering appellant to surrender possession of the real estate to appellee by August 1, 1908. Josephine Zimmerman appealed from this decree to the Appellate Court for the Second District, where the decree was affirmed. She has prosecuted a further appeal to this court, and here urges as grounds for reversal that the circuit court was not justified, under the evidence, in denying the prayer of

the original bill; that the charge of adultery against her was not sustained by a preponderance of the evidence; and that the decree of the circuit court is inequitable, and therefore erroneous, in depriving her of all interest in the property of appellee and in permanently separating her from her minor children and preventing her from visiting them at their home.

The parties to this suit were married on July 26, 1887. Both were at the time of their marriage living at Joliet, and they continued to reside in that city as husband and wife until December 7, 1907, when an injunction, issued in accordance with the prayer of the appellant's bill, was served upon appellee, restraining him from going to or entering the dwelling house theretofore occupied by himself and family. Several children were born as the fruit of the marriage, six of whom were living when the decree was entered herein. The two oldest children are girls, aged, respectively, seventeen and nineteen years. The remaining children are boys, the youngest of whom was four years of age at the time of the trial, which was had during the month of June, 1908, and the eldest was at that time fourteen years of age. At the time of his marriage to appellant appellee was employed at the steel mills of the Illinois Steel Company in Joliet and continued to work for that company until May, 1906, since which time he has been working at the city pumping station at Joliet.

The only evidence offered by appellant upon the charge of habitual drunkenness was her own testimony to the effect that appellee spent half of his money in saloons and much of his time there; that he used intoxicating liquor and often got drunk; that he was drunk most of the time; that he was drunk a large part of the time while he worked for the Illinois Steel Company. Appellant called as witnesses in her behalf her two daughters and her eldest son, who corroborated their mother as to certain acts of cruelty, but they were not questioned concerning the use of intoxi-

cating liquor by their father. Appellant's testimony upon
the question of drunkenness was not only discredited by
her own admission that the appellee had never lost a day's
work on account of intoxication, but was successfully con-
tradicted by appellee's foreman at the steel mills and by a
large number of his fellow-workmen who saw him daily,
and who testified that they had never seen him intoxicated,
had not observed any indications that he had been intoxi-
cated and that he was a steady and industrious workman,
as well as by the testimony of neighbors and two police-
men of the city of Joliet to the effect that they had seen
appellee daily for a number of years and had never seen
him intoxicated.

The acts which appellant relied upon to establish the
charge of extreme and repeated cruelty were four in num-
ber. She testified that her husband first struck her in 1890,
again in 1899, a third time in 1902, and the last time dur-
ing the month of August, 1905. She preferred charges
against her husband at the time of this last occurrence,
and he was arrested and entered a plea of guilty to the
charges of disorderly conduct and intoxication in the po-
lice court of the city of Joliet on August 25, 1905. There-
after the parties lived together as husband and wife, and
the appellant testified that the appellee had never used vio-
lence towards her since the last mentioned date. Appellee
testified that he had no recollection of any trouble with
his wife in 1890 or in 1899. He denied using violence
towards his wife in 1902, and testified that the violence
used by him in August, 1905, was in defense of his person
against an attack made upon him by his wife, and that he
pleaded guilty to the charges preferred against him in the
police court because he knew nothing about court proceed-
ings and thought it would be cheaper to pay a fine than to
employ a lawyer.

During the latter part of November, 1907, the appellee
learned facts which led him to believe that his wife had

been intimate with one Charles Kreiger, a saloon-keeper, and he immediately spoke to her about her relations with Kreiger. He also went to Kreiger's place of business and importuned him to discontinue his relations with his wife. Kreiger threatened to shoot appellee if he did not leave his saloon immediately. Within two weeks afterward appellant filed her bill for divorce. Eleven witnesses called by appellee, and who appear to be entirely disinterested, testified to circumstances which show the intimate relations between appellant and Kreiger during the year 1907. A number of these witnesses testified that Kreiger was a frequent visitor at the Zimmerman home, especially during the summer and fall of 1907, while appellee was away at work; that he usually came during the afternoon, when all members of the Zimmerman family except appellant and her infant child, a boy then about three years of age, were away from home, and that at times he sat on the porch and at other times in a swing with Mrs. Zimmerman. Other witnesses testified to seeing Kreiger and appellant walking together on the streets of Joliet during the forenoon, in the afternoon and in the evening. Several of the witnesses had seen them going in and coming out of nickel theaters. One witness had seen Kreiger walking along the street with appellant, holding her hand. He had also seen them going into an alley and entering the side door of a saloon together. Another witness saw Kreiger enter the Zimmerman premises through an alley and back gate shortly after midnight during the fall of 1907, at a time when the appellee was engaged in night work at the pumping station. Still another witness, a neighbor, saw appellant and Kreiger enter and lock the barn on the Zimmerman premises, where they remained about an hour.

Kreiger became the proprietor of a saloon the summer of 1907. Before engaging in the saloon business he conducted a restaurant in Joliet. Kreiger's sister, who was called as a witness by the appellee, testified that during the

spring of 1907 the appellant frequently went to Kreiger's restaurant and usually staid there an hour or two. This witness also testified that she accompanied the appellant to Kreiger's saloon immediately after Kreiger had assumed charge of the saloon, and that after drinking some wine or beer appellant left the saloon with Kreiger, and that the latter returned to the saloon alone in about an hour. Another witness testified that Kreiger rented a room from her during the fall of 1907 and occupied the room for about two months; that during those two months Kreiger brought a woman to the room nearly every night; that on one occasion she looked into the room through a keyhole and saw Kreiger and a woman lying on the bed; that she did not know whether or not the woman was appellant; that she heard them talking in the room and that they were conversing in Kocheverisch, a dialect of the German language, which the evidence shows was the native language and dialect of both appellant and Kreiger and was the only language which the witness could speak or understand.

Appellee testified that his wife had refused to cohabit with him since the fall of 1906. She admitted this to be true, and gave as one of the reasons therefor that appellee "didn't care for women." She further stated that she had never cared for her husband; that she had never loved him, and that she ceased to have any regard for him about two years before the trial.

Appellant admitted that Kreiger had called at her home during her husband's absence; that she had on one occasion gone to a restaurant with Kreiger and on another occasion had attended a nickel theater with him; that she had walked along the streets with him and had telephoned to him a number of times since her husband had left. She detailed one conversation with Kreiger over the telephone, which she says took place on Thanksgiving day, in 1907. She testified that her husband came home that day excited and started to run from one room to another as though he

was crazy, saying, "Oh! for God's sake! I am done! I am done!" that she was sure he had shot "that fellow;" that she went to a store, called Kreiger over the telephone at his saloon, and said, "Hello, is that you?" that he replied, "This is me;" that she inquired, "Was our man there?" that she did not mention his name at all, and that Kreiger answered, "No;" that she then said, "All right; I thought he shot somebody, the way he acted when he came home." Appellant denied that she had ever had sexual intercourse with Kreiger; that she had ever been in a barn with him; that she had ever been in his saloon; that she had ever gone to a room with him and that he had ever visited her at her home at midnight.

The first question to be determined is whether the court erred in finding appellant guilty of adultery as charged in appellee's cross-bill. If that finding was proper and warranted by the evidence then it will not be necessary to consider the question raised by appellant as to the action of the court in dismissing the original bill, for if it appears upon the trial, whether set up by the pleadings or not, that the party seeking divorce on the grounds of drunkenness and extreme and repeated cruelty has been guilty of adultery the divorce will not be granted. (*Decker* v. *Decker,* 193 Ill. 285.) The fact that a husband has been guilty of habitual drunkenness or extreme and repeated cruelty is not a sufficient recriminatory defense to a bill by him for divorce on the ground of adultery. *Bast* v. *Bast,* 82 Ill. 584; *Stiles* v. *Stiles,* 167 id. 576.

Appellant contends that the decree of the court was based upon mere suspicion, and that the court is not warranted in finding the wife guilty of adultery except upon proof so clear as to be almost irresistible. It is almost universally true that the act of adultery can be proven only by circumstantial evidence. It is an act committed in secrecy, and invariably the parties use every means in their power to conceal their act and prevent discovery. In *Bast*

v. *Bast, supra,* it is said: "As to the testimony in all such cases, it must generally be circumstantial. The fact of adultery is to be inferred from circumstances that naturally lead to it by a fair inference as a necessary conclusion. The direct fact of adultery can seldom, or ever, be proved." In *Daily* v. *Daily,* 64 Ill. 329, in passing upon this same question, the court said: "In all, or nearly all, such cases there is no direct and positive evidence of the acts charged. In such cases the parties generally use every effort to conceal the act, and courts and juries are compelled to determine the question from the behavior of the parties and from a great variety of circumstances, either of which, when considered alone, would be insufficient to prove the charge, but when considered together may be, and frequently are, amply sufficient to establish the offense. It, like all other charges, may be established by circumstantial evidence, and the evidence need only, when considered together, convince the mind that the charge is true." In *Stiles* v. *Stiles, supra,* it was held that it is the generally conceded rule that the offense of adultery shall be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy. The only conflict in the evidence on the question of adultery was the denial by the appellant of some of the graver circumstances testified to by appellee's witnesses. Her own admissions, however, tended more strongly to strengthen the position of appellee than her denials did to weaken it. The chancellor saw the witnesses and heard them testify and was in a much better position to determine their credibility than we are. A court of review will not disturb the findings of fact of the chancellor under such circumstances unless it is apparent that clear and palpable error has been committed. (*Dowie* v. *Driscoll,* 203 Ill. 480, and cases there cited; *Biggerstaff* v. *Biggerstaff,* 180 id. 407; *Heyman* v. *Heyman,* 210 id. 524; *Van der Aa* v. *VanDrunen,* 208 id. 108; *Amos* v. *American Trust and Savings Bank,* 221 id.

100; *Hudson* v. *Hudson,* 222 id. 527; *Beall* v. *Dingman,* 227 id. 294; *Hilt* v. *Simpson,* 230 id. 170; *Widmayer* v. *Davis,* 231 id. 42; *McConnell* v. *Brown,* 232 id. 336.) We find no such error, and from a review of all the testimony we believe the findings of the chancellor were just and proper. The conduct of appellant and Kreiger cannot be reasonably explained upon any other theory than that they were sustaining illicit relations.

Appellant contends that the court erred in depriving her of all interest in the property of appellee. That part of the decree is proper and in accord with the law. Appellant, by her acts as proven, forfeited any interest given her by the laws of this State in the real or personal estate of her husband. Hurd's Stat. 1908, chap. 41, sec. 14.

Appellant further contends that the decree is erroneous in awarding to appellee the care, custody, control and education of the four minor children, free from any interference on the part of appellant, and contends that under this provision of the decree she is prevented from visiting her children. While it is true that this is not the effect of that provision of the decree, and the appellant, under this decree, has the legal right to visit her children at convenient and reasonable times, provided while making such visits she demeans herself in a proper and respectful manner and is governed by the rules of propriety, still we are of the opinion that the chancellor should have made provision in the decree for the appellant to see her minor children, stating expressly the conditions under which she would be permitted to do so. It is inevitable that parties situated as are the parties to this suit would sooner or later disagree as to the conditions under which visits to the children should be made. When a trial court in a suit for divorce disposes of the custody of the minor children of the parties, it should always by its decree provide that the parent who is divested of the custody should be given the privilege of visiting the children under such terms and conditions as

seem proper in that particular case. Thus the parties would be saved the annoyance of again coming into court to secure a re-opening of the case and an adjudication of this question.

The judgment of the Appellate Court and the decree of the circuit court are affirmed except as to that provision of the decree providing for the custody of the minor children, and as to that provision the judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree in conformity with the views expressed in this opinion.

*Affirmed in part and reversed in part, with directions.*