(No. 37521.—

VIVIAN OLETA RODELY, Appellant, *vs.* GEORGE FREDERICK RODELY *et al.,* Appellees.

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

Nick D. Vasileff, of Madison, and Michael A. Plunkett, of Du Quoin, for appellant.

F. Mark Miller, of Du Quoin, and Hill & Hill, of Benton, for appellees.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Perry County which granted a divorce and ordered the conveyance of real estate. The latter feature of the decree involves a freehold so as to give us jurisdiction of the direct appeal. *James* v. *James,* 14 Ill.2d 295, 298.

Alleging extreme and repeated cruelty, the plaintiff, Vivian O. Rodely, filed a complaint for divorce against George F. Rodely, defendant, wherein she prayed for: child custody, support and alimony, an accounting for the income from a jointly owned 160-acre farm where the parties had their residence, and that the said farm be awarded to her, or, in the alternative, that dower and homestead be set off to her and the land partitioned. Defendant filed a counterclaim for divorce on the ground of desertion, and by a separate count prayed for partition of the farm. After ordering that consideration of the count for partition in the counterclaim would be held in

abeyance, a hearing was held on the other issues and a decree was entered which, among other things: (1) awarded plaintiff a divorce, after finding that she was without fault and that defendant was guilty of extreme and repeated cruelty; (2) awarded the custody of three minor children to plaintiff and ordered that defendant pay $300 a month for their support; (3) fixed visitation rights permitting defendant to see the children; (4) held that plaintiff was not entitled to an accounting of the farm income; and (5) awarded plaintiff alimony in gross in the sum of $15,000 on the condition that she convey to defendant her one-half interest in the jointly owned farm. By a subsequent supplemental decree, entered by consent, defendant was ordered to pay and discharge mortgage balances of $3,375 and $1,000, together with interest due, which were a lien on 120 acres of the farm and for which obligations the plaintiff jointly shared personal liability.

Plaintiff has appealed and her contentions are that the court erred: in denying her an accounting; in conditioning the gross alimony awarded upon the conveyance of her joint interest in the farm; in ignoring her prayer for partition; and in granting defendant visitation rights with a daughter, now six years old, outside the presence of plaintiff. Defendant filed a notice of a cross appeal, but has not pursued it by argument or citation of authority in the brief filed in this court and is deemed to have abandoned it. (*People ex rel. Nelson* v. *Olympic Hotel Bldg. Corp.* 405 Ill. 435, 451.) He has stated, as one theory of the case, that he should have been awarded a divorce on the ground of his wife's wilful desertion, but this contention may not be reviewed. Not only is his notice of cross appeal insufficient to present the question for review, but once again the point has not been urged in the argument.

We are met at the threshold of our inquiry by two preliminary contentions of defendant. They are, first, that the appeal should be dismissed due to plaintiff's failure to

comply with Rule 36 of this court in filing the record on appeal, (Ill. Rev. Stat. 1961, chap. 110, par. 101.36,) and, second, that the decree below should be affirmed for plaintiff's failure to file a complete and proper abstract, as required by Rule 38, sufficient to present fully every error relied upon. (Ill. Rev. Stat. 1961, chap. 110, par. 101.38.) The first contention is merely repetitious of a prior motion which we decided adversely to defendant, and will not be further considered. As to the second point, however, our examination of the abstract and record reveals that plaintiff has omitted entirely all testimony of defendant's witnesses, thus rendering the abstract completely inadequate for us to consider the issue raised by plaintiff's contention that defendant is an unfit person to have unchaperoned visits with his minor daughter. Under the circumstances we would be fully justified in refusing to consider this charge of error. (Cf. *Thillens, Inc.* v. *Department of Financial Institutions,* 24 Ill.2d 110, 115.) However, defendant has filed an additional abstract supplying the missing testimony and we shall in this instance, largely out of deference to defendant, consider the issue in view of the odium attaching to plaintiff's contention.

The matters of child custody and visitation privileges rest largely in the broad discretion of the trial court, and it has been repeatedly stated that its determinations with respect thereto should not be disturbed on appeal unless a manifest injustice has been done. (*Miezio* v. *Miezio,* 6 Ill.2d 469; *Reese* v. *Reese,* 26 Ill. App. 2d 244.) When the testimony of both sides is read, we find neither an abuse of discretion nor a manifest injustice in the visitation privileges accorded to defendant with respect to his daughter. The record is replete with testimony that defendant treated all of his children with kindness, love and affection, which was returned, and that he is and has been a man and father whose habits, character and morals are above reproach. The only contrary proof is found in unsubstantiated accusa-

tions of plaintiff, vaguely supported by her mother. We believe, however, as the trial court must have believed, that their testimony is so speculative, improbable and fantastic, stemming more from bitterness than truth, that it can be afforded little or no probative value. Nothing in the record would justify our reversal or modification of the visitation rights granted by the trial court.

The remaining issues revolve around the 160-acre farm and the problems presented necessitate some analysis of its acquisition and use, as well as some insight into the marital history of the parties. Defendant, who worked on his father's farm after graduating from high school, entered World War II in January 1942, and was discharged in January, 1947, at which time he was a pilot with the rank of captain. While in the service, and with money earned therein, he purchased 120 acres of farm land in Perry County for the sum of $4000. At the time, the farm was little used, drainage was poor and the fertility of the soil was low. After his discharge defendant returned to his parents' farm, started to engage in farming operations with a brother, and also worked in an implement business owned by his father.

The parties were married in August, 1949, after which defendant continued with the same employment until May, 1951, when he was recalled to active duty with the Air Force as a result of the Korean conflict. At some time between the two dates, again using his own money, defendant purchased for $2000 an additional 40 acres adjacent to the 120-acre tract. Upon his recall to service defendant entered into an oral agreement with his brother, Eugene Rodely, for the latter to take over the farm operation while defendant was away. The brother did so, and continues to do so up to the present time inasmuch as defendant is still in the service, and it was the uncontradicted testimony of defendant that, pursuant to the oral agreement, any profit after taxes and expenses had been put back into the land to improve drain-

age and to build up the soil. In this regard, plaintiff testified to a quarrel with her husband in 1956 because the farm operation was showing no profit. She testified that she "wondered what they were doing with the money" and that the defendant answered by saying "Well, it goes back in the ground." On the state of the record, it may be summarily agreed that the trial court was correct in its finding that plaintiff was not entitled to an accounting for the rents and profits.

Defendant was first assigned to a base in Portland, Oregon, and was accompanied by his wife and small son. In 1952, both the wife and son became ill with tuberculosis and because of this defendant arranged for his reassignment to Scott Field, Illinois, which was nearer home and where better medical treatment was available. While stationed there he built a modern home on the farm at a cost of $15,000 and, again, only his earnings went into the project. And while the marriage appears to have been marked from the start by quarrels and emotional upset on the part of plaintiff, it was also about this time, in early 1953, that the first serious deterioration of their relationship occurred. It was brought about when plaintiff found a military record in defendant's effects which caused her to conclude her husband had been married before and that a child from such marriage had been put out to adoption. She persisted in such belief even though defendant denied it and official inquiry failed to confirm it.

Under circumstances and upon dates not entirely clear from the abstract presented, deeds were executed which placed title to the farm in the parties as joint tenants, and there is an intimation in the testimony of plaintiff that it was done at her request to pacify her in her belief that defendant had been previously married.

Defendant's assignment at Scott Field continued until May, 1957, and it appears that he commuted to and from the farm and assisted in the farm operation in his spare

time and on week ends. In May, 1957, he was assigned to a base in the Philippines, where he was joined by his wife and three children later in the year. Plaintiff did not adjust to the environment and there were emotional scenes in which she accused her husband of infidelity. Acting on the counsel of a chaplain and a flight surgeon, defendant arranged for the plaintiff and the children to return to the United States in January, 1958. Defendant's duties brought him briefly to this country in May, 1958, and while plaintiff would not fly to New York to meet him, things were fairly harmonious when he visited at the farm. He was next in the United States in October, 1958, but on this occasion plaintiff was hostile and would not permit him to associate with the children. Within a month, plaintiff withdrew all funds from joint bank accounts, and moved from the home taking the furniture.

Defendant is still in the service, with the rank of major, and has gross monthly earnings of $1015, from which he nets $902 after deductions. Approximately $200 of this amount is flight pay for which defendant must qualify by flying each month, and which will stop should he become physically disabled. It is undisputed that the 160-acre farm, as now improved, is worth $30,000. Under all of the facts, it is plaintiff's contention that she is entitled to one half of the real estate as a joint tenant, and that the trial court transcended its authority when it conditioned the payment of the $15,000 alimony in gross awarded to her, upon the conveyance of her interest to defendant.

It may be agreed that a wife granted a divorce for the misconduct of the husband is entitled to alimony, in the absence of special circumstances, (*Savich v. Savich,* 12 Ill.2d 454, 459,) and it is also beyond question that property voluntarily conveyed by a husband to his wife, without fraud or coercion, is presumed to be a gift, notwithstanding the fact the husband purchased the property with his own money. (*Baker v. Baker,* 412 Ill. 511, 514.) At the same

time, however, section 18 of the Divorce Act confers express authority upon a court to enter a decree providing for payment of money, in gross or by installments, in lieu of alimony, as the court deems equitable and fair. (*McGaughy* v. *McGaughy,* 410 Ill. 596; *Persico* v. *Persico,* 409 Ill. 608; Ill. Rev. Stat. 1961, chap. 40, par. 19.) The court here thus did not transcend its authority when it ordered the payment to plaintiff of $15,000 in gross, nor, in our opinion, was it inequitable or an abuse of discretion under the circumstances of the case for the court to order the conveyance of plaintiff's interest in the farm to her husband.

While defendant was at fault and admitted that he had slapped plaintiff on two occasions, the entire record shows that he was constantly provoked throughout the course of the marriage by unsubstantiated accusations, made to himself and friends, that he had been married before, that he was unfaithful and that he was a sex maniac. By the same token, the record shows restraint upon his part when he was frequently cursed and physically attacked by his wife, and that he was the moving party in constant efforts to allay his wife's suspicions and to save their marriage. There are, too, indications of either a refusal or no effort on the part of plaintiff to adapt herself to her husband's friends or chosen occupation. And while the award of $15,000 approximated one-half the value of the farm in which plaintiff was a joint tenant completely by gift, the trial court, in looking to the equities of the situation, could also consider (1) her conduct of depleting the joint bank accounts and removing the furniture, (2) the circumstances that the decree relieved her of personal liability on the mortgage indebtedness amounting to almost $5,000, and (3) the fact that a forced sale of the farm might not produce its full value.

Other considerations making it both practical and expedient that alimony be disposed of in gross, and of

especial benefit to plaintiff, arise from the hazardous nature of defendant's occupation as a pilot which presents at least some possibility that his income could be abruptly lost, and from the circumstance that should defendant's military tenure be ended, the farm is the only apparent source from which he could earn a livelihood and support his children. Considering all things shown in the record, we are of the opinion that the property and alimony adjustment effected by the decree was fair and equitable to the plaintiff.

For the reasons stated this case differs from *Doody* v. *Doody,* 28 Ill.2d 191, in which an opinion has been filed at this term of court. There many equities existing in favor of the wife, which have no counterpart here, were found to render the settlement inequitable.

The decree of the circuit court of Perry County is affirmed.

*Decree affirmed.*