STEPHANIE HAWKINS, Plaintiff-Appellee, *v.* JEFFREY BRUCE HAWKINS, Defendant-Appellant.

Third District    No. 80-357

Opinion filed December 29, 1981.

BARRY, J., specially concurring.

John W. Alsup, Jr., of Mt. Sterling, for appellant.

Robert L. Metzler, of Pekin, for appellee.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:
This appeal arises from a decision of the Circuit Court of Tazewell County granting visitation privileges to the maternal grandparents of a minor child, Charland J. Hawkins. The minor's father, Jeffrey Hawkins, urges us to find that the circuit court lacked jurisdiction to order such visitation, or alternatively, that the circumstances of the instant case do not warrant such an order. After reviewing the record and the authorities cited by counsel for both parties, we cannot agree with the father's position and therefore affirm the decision of the circuit court.

Jeffrey Hawkins was divorced from Stephanie Hawkins on May 5, 1977. The Tazewell County Circuit Court awarded custody of Charland, the minor child of the parties, to his mother. Subsequently, on October 6, 1978, Stephanie Hawkins was murdered while residing with Charland in the State of Florida. Following this tragedy, the minor lived for a time with his father, and then with his maternal grandparents, Thomas and Margy Colson, and his maternal great-grandparents, Earl and Margaret Goodin. A dispute over custody arose between the minor's maternal relatives and his father, with the dispute culminating in an action before the Tazewell County court. A recitation of the facts surrounding that dispute is set forth in *In re Hawkins* (1979), 77 Ill. App. 3d 873, 396 N.E.2d 668, wherein we determined that Jeffrey Hawkins was entitled to legal custody of his son.

Following our 1979 decision, the Colsons, Charland's maternal grandparents, filed a petition for visitation rights. After hearing those rights were granted. Jeffrey Hawkins contends that the visitation order of the circuit court should be reversed.

An issue has been raised here regarding the venue of the Tazewell County court to grant visitation privileges to the Colsons. After filing the previously referenced custody action in the Tazewell County court, Jeffrey Hawkins moved with his son to Brown County, Illinois. It is argued that this change in residence simultaneously changed the proper venue for post-judgment petitions. We note that venue in such matters is waived unless timely objection is made. (Ill. Rev. Stat. 1979, ch. 40, par. 512(d).) Finding no such objection in the record, we need not consider whether venue in Tazewell County was proper or otherwise.

An additional issue has been raised regarding the jurisdiction of the circuit court to hear a request from grandparents for visitation privileges. Jeffrey Hawkins, the appellant here, correctly points out that the Illinois Marriage and Dissolution of Marriage Act provides express guidance for

granting visitation to a noncustodial "parent", but no similar statutory authority exists for grandparents or other interested parties. (See generally Ill. Rev. Stat. 1979, ch. 40, par. 607.) We believe the trial court was empowered to award custody to the grandparents despite the silence of the Illinois Marriage and Dissolution of Marriage Act on this issue.

■■ Prior to the adoption of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*), the matters of divorce and child custody were regulated by the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.* (repealed 1977)). That Act was silent not only as to visitation for grandparents and other interested parties, but also as to visitation for noncustodial parents. Nevertheless, a long-standing common-law tradition clearly established the circumstances under which parents, grandparents and others might be entitled to court-ordered visitation with a minor child. (*Miner v. Miner* (1849), 11 Ill. 43; *Zimmerman v. Zimmerman* (1909), 242 Ill. 552, 90 N.E. 192; *Zechman v. Zechman* (1945), 391 Ill. 510, 63 N.E.2d 499; *Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347; *Aud v. Etienne* (1970), 47 Ill. 2d 110, 264 N.E.2d 196; *Chodzko v. Chodzko* (1976), 66 Ill. 2d 28, 360 N.E.2d 60.) We hold that this common-law tradition has continuing validity even after the repeal of the Divorce Act, at least insofar as the tradition provides authority for extending visitation privileges to grandparents in special, limited circumstances. *Chodzko v. Chodzko.*

■■■ In support of this holding, we note that the rules of statutory construction argue for such a result. A statute will be construed as changing common law only to the extent that the terms thereof warrant, or as necessarily implied from what is expressed. (*Sternberg Dredging Co. v. Estate of Sternberg* (1957), 10 Ill. 2d 328, 140 N.E.2d 125; *Acme Fireworks Corp. v. Bibb* (1955), 6 Ill. 2d 112, 126 N.E.2d 688; *People v. Monoson* (1979), 75 Ill. App. 3d 1, 393 N.E.2d 1239.) Repeal of the common law by implication is not favored. (*Reeves v. Eckles* (1966), 77 Ill. App. 2d 408, 222 N.E.2d 530, *appeal after remand* (1969), 108 Ill. App. 2d 427, 248 N.E.2d 125.) The express language of section 607 of the Illinois Marriage and Dissolution of Marriage Act does not require the implied repeal of prior law creating visitation privileges for grandparents. In accord with this view are the writings of distinguished practitioners (Ill. Ann. Stat., ch. 40, par. 607, Historical and Practice Notes, at 69-70 (Smith-Hurd 1980)), as well as the decisions from courts of other States that have adopted the Uniform Marriage and Divorce Act from which section 607 derives. *Simpson v. Simpson* (Ky. 1979), 586 S.W.2d 33.

The final issue raised on this appeal concedes the authority of the court to consider a request on behalf of the grandparents for visitation, but challenges the granting of that request based on the evidence presented to the circuit court in the instant case. The leading case on this subject is *Chodzko v. Chodzko.* Therein, the supreme court stated:

"The right to determine the third parties who are to share in the custody and influence of and participate in the visitation privileges with the children should vest primarily with the parent who is charged with the daily responsibility of rearing the children. In the absence of unusual circumstances, these matters should not be of judicial concern." (66 Ill. 2d 28, 35, 360 N.E.2d 60, 63.)

The *Chodzko* court concluded:

"[T]he giving of the visitation rights to the grandfather over the objections of the mother in the absence of any special circumstances justifying the interference with the superior custodial right of the natural parent was error." (66 Ill. 2d 28, 35, 360 N.E.2d 60, 63.)

Nonetheless, the *Chodzko* majority approvingly cited three fact situations where the special circumstances justified judicial interference on behalf of grandparents. Those special facts existed in *Solomon v. Solomon* (1943), 319 Ill. App. 618, 49 N.E.2d 807, *Lucchesi v. Lucchesi* (1947), 330 Ill. App. 506, 71 N.E.2d 920, and *Boyles v. Boyles* (1973), 14 Ill. App. 3d 602, 302 N.E.2d 199.

■■ We find the facts of the case *sub judice* sufficiently similar to the special circumstances of the *Boyles* decision to sustain the visitation ordered by the circuit court. There as here, the natural parent was deceased. There as here, the minor child had a particularly close relationship with the grandparents because of their daily association. There as here, it was determined that a continuation of the relationship between the child and his grandparents would be a positive benefit affecting the best interest of the child. And, in the final analysis, it is the best interest of the child that must weigh most heavily in the court's determination. *Chodzko v. Chodzko*.

For the reasons above stated, and in reliance on the authorities cited, we conclude that the order previously entered by the Tazewell County Circuit Court was correct.

Affirmed.

STOUDER, J., concurs.

JUSTICE BARRY specially concurring:

While I agree with the result reached by the majority, I do so for reasons somewhat different from those set forth in the main opinion. For a clearer picture of the situation as I view it, a few additional facts must first be noted.

Without unduly reciting the details of our earlier decision respecting the parties in this appeal (*In re Custody of Hawkins* (1979), 77 Ill. App. 3d

873, 396 N.E.2d 668), it is significant to the issues herein that the grandparents/petitioners requested relief from the trial court with hands at least as unclean as those of the father/respondent. It appears from the earlier proceedings that the child's mother, who had legal custody of the child, had, from the time of her divorce from Jeffrey Hawkins until early in 1978, remained in Illinois where, undoubtedly, the child had some contact with the Colsons. Then Mrs. Hawkins, without leave of court, left Illinois to live with her grandparents in Florida. When Mrs. Hawkins was murdered, the child was returned to Illinois and stayed with Jeffrey Hawkins until he was again spirited away to Florida, apparently through the joint efforts of the child's great-grandfather and Margy Colson. At this point, petitions were filed by the great-grandparents in Florida as well as by Jeffrey Hawkins in Illinois for custody of the child. Hawkins was successful in his petition and travelled to Florida to retrieve his child. His demand was refused; and, as a result, Margy Colson was held in contempt of the Illinois court. The Florida court enforced the Illinois custody decree, Jeffrey Hawkins regained custody of the child, and ultimately this court vacated the order of contempt against Margy Colson.

This action followed wherein visitation rights, as opposed to custody, are sought by Margy and Thomas Colson. What is apparent from the history of this case is that both parties to the instant action are willing to test the limits of the judicial system to ensure that they retain as close a relationship as possible with the child. Allegations of misconduct of the parties were levied by both sides, and these were resolved by the trial court in favor of the Colsons.

The cases cited in the majority opinion establish that special circumstances, so as to permit judicial imposition of visitation rights on behalf of grandparents, must be something greater than a showing merely that one of the child's parents is deceased. (In my opinion, the special-circumstances test established by common law has not been abolished, but is inferentially incorporated into the statute governing grandparental visitation rights which was enacted subsequent to the initiation of the instant action. (See Pub. Act 82-344.) In the instant case, the additional circumstance—the establishment of a relationship between the child and the Colsons prior to the death of the child's mother—is the bare minimum additional factor allowable to satisfy the standard established in Illinois. Nonetheless, the trial court, having heard all of the testimony, concluded that this relationship, together with the fact of the death of the child's mother, was adequate and allowed the grandparents the relief sought by them.

In my opinion, the evidence upon which the trial court was asked to decide whether visitation rights should be granted presented a factual issue. As a general rule on factual questions, we should, as the majority

implies we should here, defer to the ruling of the trial court. In Illinois, it is axiomatic that the trial court is afforded wide discretion in custody matters, and the court's ruling should not be disturbed without a showing that the court abused its discretion. The trial court, unlike a court of review, has an opportunity to observe the witnesses and weigh the evidence in light of witness credibility. In addition, the trial court is in a position to modify its order when/if a change in circumstances warrants further judicial action. With these considerations in mind, and despite the fact that I find the case actually weak under the special-circumstances standard, I concur with the majority opinion in affirming the trial court's order.