# Illinois Official Reports

## Appellate Court

<table>
<tr><td colspan="2"><em>Butler v. Harris</em>, 2014 IL App (5th) 130163</td></tr>
</table>

| | |
|---|---|
| Appellate Court Caption | ROBERT BUTLER and ELIZABETH BUTLER, Plaintiffs-Appellees and Cross-Appellants, v. MARK HARRIS, Defendant-Appellant and Cross-Appellee (Lisa Harris, n/k/a Lisa Bohnenstiehl, Defendant). |
| District & No. | Fifth District<br>Docket No. 5-13-0163 |
| Filed | June, 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendants failed to disclose problems with the septic system of the house they sold to plaintiffs, the judgment for defendants on the count alleging common law fraud was affirmed and the judgment for plaintiffs on the count alleging a violation of the Residential Real Property Disclosure Act was reversed and the cause was remanded with directions to require each party to pay its own attorney fees and costs, since plaintiffs relieved defendant of any liability when they negotiated an "as is" purchase at a reduced price based on a list of defects they presented to defendants, including the septic system, and in view of the fact that plaintiffs' claim was not meritless, an award of fees and costs was not warranted. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-SC-5187; the Hon. Thomas W. Chapman, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on
Appeal

Natalie T. Lorenz, of Mathis, Marifian & Richter, Ltd., of Belleville, for appellant.

Thomas W. Burkart, of Burkart Law Office, of Hamel, for appellees.

Panel

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Cates concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs, Robert and Elizabeth Butler, filed a two-count complaint against defendants, Mark Harris and Lisa Harris (now Lisa Bohnenstiehl due to defendants' divorce), to recover between $3,200 and $4,000 in septic system repairs and over $32,000 in attorney fees. Count I alleged common law fraud, and count II alleged a violation of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/1 *et seq.* (West 2008)). After a bench trial in the circuit court of Madison County, the trial court entered judgment in favor of defendants on count I and a judgment in favor of plaintiffs on count II in the amount of $12,000. Mark Harris filed a timely notice of appeal, raising the following two issues: (1) whether the trial court erred in finding that the standard of proof in a case based upon the Disclosure Act is preponderance of the evidence, and (2) whether the trial court erred in finding defendants violated the Disclosure Act. Plaintiffs filed a cross-appeal in which they raise the following issues: (1) whether the trial court erred in refusing to find defendants committed fraud, and (2) whether the trial court erred in failing to award them all of their damages and attorney fees. We affirm in part and reverse in part on the basis that plaintiffs failed to meet their burden of proof on either count and remand with directions that each party pay his or her own attorney fees. We note that Lisa Bohnenstiehl has not participated in this appeal.

¶ 2                                    BACKGROUND
¶ 3        On October 30, 2008, plaintiffs purchased a house located at 20 Creekwoods Trail in Highland from defendants. Approximately six months after moving into the home, plaintiffs received notice from Madison County that the septic system was not in compliance with its codes and ordinances and that the county had received complaints regarding drainage on plaintiffs' property. As a result, on October 30, 2009, plaintiffs filed a two-count small claims complaint against defendants in which they alleged that defendants fraudulently misrepresented the condition of the property with the intent to induce plaintiffs to complete the purchase and failed to disclose the septic system defects and prior drainage problems on the residential real property disclosure report form (disclosure report form) required by the Disclosure Act (765 ILCS 77/35 (West 2008)). Plaintiffs alleged that as of the date of filing the complaint their damages exceeded $5,000, but were less than $10,000.

¶ 4    On May 27, 2010, Lisa Bohnenstiehl filed a *pro se* motion to continue the case, which was set for June 2, 2010. On June 2, 2010, the only party to appear was defendant Mark Harris. The trial court entered a judgment in favor of defendants and ordered plaintiffs to pay costs. Plaintiffs filed a motion to vacate the default judgment in which they explained that they did not appear after having been advised that Bohnenstiehl was granted a continuance because she was having surgery on June 2, 2010. The trial court denied the motion to vacate, specifically stating that the judgment entered on June 2, 2010, was not a "default judgment" because the case was set for trial and no continuance was granted. Plaintiffs appealed to this court. In an unpublished order, we reversed and remanded with directions that defendant Bohnenstiehl's motion to continue be set for hearing and noted that even if the motion to continue were to be denied, plaintiffs must be given the opportunity to have the matter heard on the merits. *Butler v. Harris*, No. 5-10-0463 (2011) (unpublished order pursuant to Supreme Court Rule 23).

¶ 5    While the initial appeal was pending, Bohnenstiehl filed for bankruptcy and a stay was issued. Plaintiffs obtained a relief from stay. On July 18, 2012, plaintiffs filed their first amended complaint. Plaintiffs again alleged that when defendants sold their home to plaintiffs, defendants knew of defects with the home's septic system, but did not disclose those defects and reported that they had no problems with the septic system. The first amended complaint raised the same counts of common law fraud and a violation of the Disclosure Act, but due to attorney fees, plaintiffs now alleged their damages were "more than $10,000 but less than $50,000."

¶ 6    A bench trial was conducted on January 29 and 30, 2013, during which the following evidence was adduced. Plaintiffs and defendants entered into negotiations for the purchase of property. Plaintiffs received a disclosure report form before they made an offer on the property. The form was signed by both defendants, but at different times due to the fact they were separated at the time. On the form, defendants checked "No" to the question, "I am aware of material defects in the septic, sanitary, sewer, or other disposal system." However, defendants made a notation on the form in which they specifically stated: "In the past, the ejector pump has backed up twice. Replaced GFI[−] has not happened since."

¶ 7    Defendants' original asking price was $242,000. Elizabeth Butler testified that she and her husband were not willing to pay that much, so they originally ruled out the home. However, a few months later she noticed the price was lowered to $185,000, so they called the realtor and went to look at the home. Before making an offer, Robert Butler prepared a sheet outlining problems with the property and the estimated costs of repairs. This sheet was submitted along with plaintiffs' offer to purchase the home and was entered into evidence as Exhibit 11 by defendants. The sheet that outlines the home's problems specifically lists flooring, roof, furnace, central air, and septic system as items which need to be repaired. The sheet also contains an estimated repair value on all of these items, except the septic system repair. The sheet specifically states that the costs of such repairs are "unknown."

¶ 8    On August 21, 2008, plaintiffs offered to purchase the home for $162,375. Along with the offer, they submitted the sheet on which Robert Butler set forth problems with the home in the hope that they could justify their low offer. Defendants accepted the offer, and closing was scheduled for September 21, 2008. An addendum was later added as more time was needed to complete the sale because the sale of the property was a "short sale" and the bank needed more time to decide whether to accept the offer. Closing was extended to November

7, 2008. An addendum to the original contract specifically provided, "Property is being sold in an 'as is' condition."

¶ 9    Elizabeth Butler testified that prior to closing, plaintiffs hired both a home inspector to do an inspection of the property and Frank's Septic Company to do a more thorough inspection of the septic system. Frank's report specifically states:

> "Pump out [and] inspect tank- precast aeration tank- Jet tank aprox 1500 Gal-Tank looks ok- Inlet line open water level good- motor working media looks good- Needs rock in back filter vaults by chlorinator- needs chlorine in tube-Discharge open- Discharge area may need new rock at some point."

Elizabeth Butler testified she first noticed problems with the septic system "around that January/February mark as things start to kind of thaw outside [*sic*]." The actual closing on the home took place on October 30, 2008.

¶ 10    According to Elizabeth Butler, water would come into the basement when she ran the dishwasher or did too many loads of laundry. She said the problems were worse when it rained heavily.

¶ 11    Robert Butler testified that he first noticed water problems on the property in the spring of 2009 when there were heavy rains. Eventually, he selected Phillip McDowell of D-N-P Plumbing to correct the septic problem at a cost of $3,275. He testified that he had several conversations with his neighbors, the Toennieses, about water problems. On one occasion, he came home to find that Deborah Toennies placed clay mud on the common road leading to the neighborhood tennis courts and covered it with straw. Robert Butler removed the clay and straw because he said it was aggravating drainage problems on his property. In removing these layers, he found a drainage pipe on his property that was covered with dirt and impacted with mud. Robert Butler confirmed that he put river rock in this area in May 2009. Robert Butler denied adding to the aeration pipe on his property.

¶ 12    Andrew Butler, plaintiffs' son, age 28, testified that he lived in the basement of the home in question and had at least 10 conversations with the neighbor, Deborah Toennies, about drainage and/or septic problems with the house. He said within months of moving into the house, he and his dad stopped water intrusion by making necessary repairs. They also replaced rotted wood on the door frame in the basement, dug out the dirt and clay two feet down by the door, and filled it with rock. They also extended the gutter line to the edge of the property in order to alleviate ground saturation caused by runoff and the septic system. Deborah told him that through the years, defendants tried to fix the standing water issue between the properties. He said Deborah complained numerous times about the septic smell.

¶ 13    Mark Harris testified that he bought the home in 2002 and lived there until July 2007, when he and his wife separated. Defendants were not the original owners of the property. He testified that he did not have any trouble with water in the basement or with the septic system while he lived there, except for the time the ejector pump failed, which he disclosed prior to closing. He said his divorce was contentious and during divorce proceedings he was ordered to pay the mortgage on the house to his wife, but his wife failed to pay the mortgage with that money, so the home went into foreclosure. He testified that after he moved out of the home, his ex-wife never complained to him about any issues with the septic system. He said he never had any complaints from any of his neighbors about a water problem similar to the complaints alleged in the lawsuit filed by plaintiffs. He testified Jet Precast performed routine maintenance on the septic system every two years while he lived there, with the last

- 4 -

maintenance done in 2006. Jet Precast never indicated there was any type of problem with the system.

¶ 14 Lisa Bohnenstiehl testified that there were no problems with the septic system while she lived in the house, except for the ejector pump failure. She testified she did not have any conversations with her neighbors, the Toennieses, about the need to fix any kind of water flow problem. When she lived in the property, she did not experience any of the problems with the dishwasher and the washing machine or water in the basement as experienced by plaintiffs.

¶ 15 Jeffrey Hurst, an inspector for Madison County planning and development, testified that he went out to inspect the property on May 5, 2009, after Deborah Toennies called to complain about effluent (water that comes out of the system after it is treated) running onto her property from plaintiffs' property. This was after plaintiffs did work on the common road and placed river rock on the road. Hurst sent defendants a letter on May 7, 2009, outlining the problems he discovered during his inspection, including the fact that the discharge pipe for the aeration system was not 10 feet from plaintiffs' property line as required, there was no sample port, there was effluent draining onto neighboring property creating a nuisance, there was no perforated cover at the end of the discharge, and the discharge pipe did not allow a free flow.

¶ 16 At trial, Hurst testified the discharge pipe did not allow a free flow because it was buried in rock. He said this would allow fecal bacteria to grow and cause an odor. In order to be in compliance with the code, effluent from an aeration system should not leave a property and the discharge pipe should be 10 feet back from the property line. Hurst testified there was a fresh pile of dirt near the area where the discharge pipe was located and it appeared fresh rock had been placed on the common road. Photographs introduced into evidence confirmed that work had been done to the area by plaintiffs on May 3, 2009. Hurst confirmed he never received complaints from Deborah Toennies or anyone else prior to the complaint lodged by Deborah in the spring of 2009.

¶ 17 Deborah Toennies testified that she built her home in 1996 and moved in that year. She moved out of the neighborhood two years prior to trial. During the time she lived there, three different people owned the neighboring property, including the original owners, defendants, and, finally, plaintiffs. Prior to plaintiffs' arrival, she always took care of what was known as tennis court road, which was dirt and then a top layer of rock. She treated it as if it were her own yard. However, when plaintiffs moved in, they "dug out the tennis court road where it dips down, the lowest point, dug all the dirt out and filled it in with rock and disturbing the flow of everything that came down, the rain, water, everything. It just disturbed everything because it did not absorb anymore."

¶ 18 Deborah talked to the neighborhood association and learned plaintiffs did not get permission from the association to do what they did, so she called the county inspector. The inspector told her plaintiffs added more pipe to their aeration system and were now in violation of the code because it was running right up to the road. Deborah testified she never had a problem with drainage prior to plaintiffs making changes to the road. Deborah explained that her property was the lowest lying in the subdivision and she and her husband put in an elaborate drainage system in order to ensure they did not have problems even during heavy rains. However, after plaintiffs moved in and "dug out the tennis court road because of where their aeration system is, it would drain by the walkout basement door."

Deborah further explained that after plaintiffs "removed all that dirt out of the road and put rock in, then it all filtered into [her] front yard to the point that [her] riding mower would get stuck in [her] front yard." Deborah said plaintiffs came over to her house and spoke to her and her husband about the problem and she and her husband asked plaintiffs to undo what they did to the road, but plaintiffs refused.

¶ 19 Deborah insisted she never had any of these water or drainage issues with the original owners of the property or with defendants. She admitted that sometimes it was wet at tennis court road because of where the aeration discharge was located, but she never had any problems with the previous two owners. She also said that sometimes there was flooding on her property, but it had nothing to do with defendants. Instead it was due to the low-lying nature of her property, of which she and her husband were cognizant and the reason why they put in an elaborate drainage system. She said plaintiffs never complained to her that the straw and clay she put on the road caused any problems for them. She testified the problems arose after plaintiffs took out the dirt on the road and filled it with rock. The water started to flow onto the Toennieses' property rather than absorb into the ground.

¶ 20 Stan Toennies testified that he was not aware of drainage problems when defendants lived on the property and he could not remember any smells when either defendants or plaintiffs occupied the property. He admitted it is a low-lying area, but neither he nor his wife ever complained to defendants about any drainage problems. He testified that drainage problems only arose when plaintiffs moved into the property.

¶ 21 Phillip McDowell of D-N-P Plumbing testified that he corrected the code violations involving the septic system in August 2009 after he was called by plaintiffs to correct the discharge pipe covered by rock. He recommended that the discharge be moved and a rock pit installed. The repairs cost $3,275. McDowell testified he could smell the system when he went out to inspect it and the previous owners should have known about the septic system issues because the rock was built up, the water was running out, and there was an odor. According to McDowell, this type of situation does not occur overnight.

¶ 22 Plaintiffs also hired Leroy Dawson, an architect, to inspect their home on September 7, 2010, after the lawsuit was filed. Plaintiffs paid Dawson $250 for an inspection. Dawson did not prepare a written report. Dawson testified at trial for plaintiffs. He testified that he did not notice a smell with regard to the septic system, but said defendants should have known of the problems with the property before they sold it to plaintiffs and the home inspector should have noticed the problems.

¶ 23 Leonard Reeker, a neighbor, testified that on one occasion, he walked on the common road, tennis court road, and noticed the area in question being very damp and he smelled sewage; however, Reeker could not remember who owned the property when this occurred. He also said that this was the only time he noticed a problem.

¶ 24 Randy Wise, who also lived in the subdivision, testified he used the common road between the property at issue and the Toennieses' property at least once a month since the 1980s. According to Wise, the original owners of 20 Creekwoods Trail had some septic issues, but fixed the home before they sold it to defendants. Wise did not notice any drainage issues with the septic system while defendants lived on the property.

¶ 25 On March 5, 2013, the trial court entered judgment in favor of defendants on count I, the fraud count, but found in favor of plaintiffs on count II, violation of the Disclosure Act. The

trial court awarded plaintiffs $12,000, without itemizing the award. The trial court's order specifically states:

> "After review of the relevant law, and taking all the relevant facts and circumstances into consideration, the court finds the proper award, arising from the Disclosure Act case, and including reasonable attorneys fess [*sic*], and cost of suit, is in the amount of [$12,000]."

Mark Harris filed a timely notice of appeal. Plaintiffs filed a cross-appeal.

¶ 26                                ANALYSIS

¶ 27    The first issue we are asked to address is whether the trial court applied the proper standard of proof in determining whether defendants violated the Disclosure Act. The trial court applied the preponderance of the evidence standard to plaintiffs' claim under the Disclosure Act, but defendant Mark Harris insists the proper standard of proof is clear and convincing. We agree with defendant.

¶ 28    We review the question of whether the proper standard of proof was applied *de novo* because the question requires interpretation of the Disclosure Act and is, therefore, a question of law. *Hogan v. Adams*, 333 Ill. App. 3d 141, 146, 775 N.E.2d 217, 221 (2002). The Disclosure Act does not provide an express provision regarding the standard of proof to be applied for a violation. However, according to established rules of statutory construction, a statute is construed as changing common law "only to the extent that the terms thereof warrant, or as necessarily implied from what is expressed." *Hawkins v. Hawkins*, 102 Ill. App. 3d 1037, 1039, 430 N.E.2d 652, 654 (1981). An inference that the common law is repealed is not favored. *Hawkins*, 102 Ill. App. 3d at 1039, 430 N.E.2d at 654. Common law requires that fraud be proven by clear and convincing evidence. *Brown Specialty Co. v. Allphin*, 75 Ill. App. 3d 845, 850-51, 394 N.E.2d 659, 663 (1979).

¶ 29    Here, the trial court applied the preponderance standard on the basis that it is the standard of proof to be applied in cases brought pursuant to the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)). See *Fox v. Heimann*, 375 Ill. App. 3d 35, 48, 872 N.E.2d 126, 139 (2007). However, we decline to analogize the Disclosure Act to the Consumer Fraud Act because "an individual who casually sells his or her own single-family home is not subject to liability under the Consumer Fraud Act." *Provenzale v. Forister*, 318 Ill. App. 3d 869, 877, 743 N.E.2d 676, 682 (2001). Moreover, while our General Assembly specifically states that the Consumer Fraud Act "shall be liberally construed to effect the purposes thereof" (815 ILCS 505/11a (West 2008)), there is no such provision for liberal construction in the Disclosure Act. Accordingly, we believe the trial court improperly applied the preponderance of the evidence standard and that the proper standard of proof is actually clear and convincing.

¶ 30    The second issue raised by defendant is whether the trial court erred in finding defendants violated the Disclosure Act. Defendant contends there is no need to remand the case for further review because the trial court already considered the facts of this case as to defendants' knowledge under the clear and convincing standard with respect to the common law fraud claim. For purposes of brevity, we can also consider and dispose of the first issue raised by plaintiffs in their cross-appeal, whether the trial court erred in refusing to find defendants committed fraud.

¶ 31    To prove common law fraud, the plaintiffs must prove that the defendants intentionally made a false statement of material fact or failed to disclose a material fact, that the plaintiffs had a right to rely on the false statement or omission, that the statement or omission was made for the purpose of inducing reliance thereon, that the plaintiffs, in fact, relied on the statement or omission, and that the plaintiffs suffered injury as a direct result. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996); *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1004-05, 618 N.E.2d 1013, 1017 (1993). The defendants' knowledge of the falsity of the statement, or a deliberate concealment with the intent to deceive, is an essential element of common law fraud. *Park v. Sohn*, 89 Ill. 2d 453, 459, 433 N.E.2d 651, 654 (1982). Common law fraud must be proved by clear and convincing evidence. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191, 835 N.E.2d 801, 856 (2005). Here, the trial court specifically found "against plaintiffs on the fraud action. The evidence considered as a whole suggests no reliance or no reasonable reliance." We agree.

¶ 32    Moreover, even assuming *arguendo* that the preponderance of the evidence standard is the proper standard to be applied, we believe the trial court erred in finding that under the evidence presented at trial, plaintiffs proved their case under the Disclosure Act. The Disclosure Act provides a seller is not liable for error, inaccuracy, or omission of any information delivered pursuant to the Act if the seller had no knowledge of such error, inaccuracy, or omission based upon a reasonable belief that a material defect had been corrected. 765 ILCS 77/25(a) (West 2010). The Disclosure Act also requires that a violation be done knowingly. 765 ILCS 77/55 (West 2010); *Woods v. Pence*, 303 Ill. App. 3d 573, 576, 708 N.E.2d 563, 565 (1999). Here, the evidence as to defendants' knowledge was insufficient to meet either the clear and convincing standard or a preponderance of the evidence standard for the following reasons.

¶ 33    First, on the disclosure report form required by the Disclosure Act, defendants specifically identified the septic system as a potential problem by noting that in the past the ejector pump backed up twice. Second, prior to closing, plaintiffs hired not only a home inspector to do a complete inspection on the property, but also a separate septic system inspector to inspect the septic system. The home inspector did not notice any problems with the system, and Frank's Septic Company found only minor issues that might necessitate the need for future repairs, but ultimately found that the system looked good. Third, during negotiations, plaintiffs submitted a document in which they identified problems with the house in an effort to negotiate a lower price. Included on the list of potential problems was the septic system.

¶ 34    We acknowledge that plaintiffs' best evidence came from Phillip McDowell of D-N-P Plumbing who was hired by plaintiffs to correct the code violations involving the septic system. McDowell testified he could smell the system when he went out to inspect it and that the previous owners should have known about the septic system issues because it was not the type of situation which would occur overnight. Leroy Dawson, who was also hired by plaintiffs, testified that while he did not smell any foul odors, defendants nevertheless should have known about the septic system problems. However, we also note that Dawson's real concern seemed to be with the home inspector who failed to notice the problem with the septic system.

¶ 35    Given the fact that neither the home inspector nor Frank's Septic Company, both of whom were hired by plaintiffs prior to their purchase of the property, noticed the septic

- 8 -

system problems, we cannot say defendants had actual knowledge of the problems in question. Even the neighbors testified that they were not aware of any problems with the septic system until plaintiffs moved in and made changes to the road, including adding rock. Finally, our review of the record indicates that no one actually testified that the repairs made to the septic system constituted a "material" defect which should have been known when the home was sold, which is required by the Disclosure Act (765 ILCS 77/25(a) (West 2010)).

¶ 36     In reviewing a judgment entered after a bench trial, the trial court's findings will not be disturbed on appeal unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251, 779 N.E.2d 1115, 1130 (2002). A judgment is against the manifest weight of the evidence where the opposite conclusion is apparent or where findings appear to be arbitrary, unreasonable, or not based upon the evidence. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155, 839 N.E.2d 524, 531 (2005). *Eychaner*, 202 Ill. 2d at 252, 779 N.E.2d at 1130. Here, we find the trial court's decision against defendants with regard to count II was against the manifest weight of the evidence under either standard of proof. The trial court's decision with regard to count I, finding in favor of defendants, was not against the manifest weight of the evidence.

¶ 37     The only remaining issue is the award of damages and attorney fees. In the instant case, the trial court did not itemize the damages awarded. The judgment order merely awards plaintiffs $12,000, which includes both attorney fees and the cost of the suit. From this award, it is impossible for us to know how much was allocated toward septic repairs, which were alleged to be $3,275, attorney fees, which are identified in the trial court's order as "almost thirty-five thousand dollars," or costs. What is clear is that the trial court reduced the demand for attorney fees, but the trial court failed to provide any analysis of how it arrived at that figure. In any event, because a buyer seeking attorney fees under the Disclosure Act is required to establish knowing misconduct on the part of the seller in order to recover attorney fees, the award must be reversed in its entirety. Plaintiffs failed to prove that defendants knowingly failed to disclose problems with the septic system.

¶ 38     We point out that the Disclosure Act specifically provides for an award of attorney fees to the "prevailing party":

> "A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the [disclosure report form] that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party." 765 ILCS 77/55 (West 2008).

The sentence allowing for the grant of attorney fees does not specify a specific party to a transaction. It also uses the term "prevailing party" when addressing the award of attorney fees.

¶ 39     Because the Disclosure Act does not limit the award of attorney fees to a specific party, "either plaintiffs or defendants, in appropriate circumstances, may recover fees under the [Disclosure] Act." *Miller v. Bizzell*, 311 Ill. App. 3d 971, 975, 726 N.E.2d 175, 178 (2000). However, attorney fees would only be appropriate for a prevailing seller if the buyer filed a "meritless claim." See *Miller*, 311 Ill. App. 3d at 974, 726 N.E.2d at 178. In the instant case, we cannot say plaintiffs' claims were meritless in light of the fact that Phillip McDowell and Leroy Dawson testified that defendants should have been aware of the problems with the septic system.

¶ 40     We agree with the trial court that this case presents a "pretty simple real estate disclosure case." It is unfortunate that this small claims case escalated from something simple to something much larger and that the attorney fees and costs got out of hand. It is time to end this litigation.

¶ 41     The facts clearly show that plaintiffs were aware of potential problems with the septic system before they purchased the property. Plaintiffs signed an "as is" contract. "Generally, a sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase *as is* relieves the seller from liability for defects in that condition." (Emphasis in original.) Black's Law Dictionary 129-30 (9th ed. 2009). Furthermore, plaintiffs even negotiated a lower price based on their own enumerated deficiencies, including the septic system. Accordingly, we find that plaintiffs are not entitled to recovery under either count I or count II. However, because we do not find plaintiffs' suit meritless, we believe each party should pay his or her own attorney fees.

¶ 42     For the foregoing reasons, we hereby affirm the judgment of the circuit court of Madison County in favor of defendants on count I, reverse the judgment of the circuit court in favor of plaintiffs on count II, and remand with directions that each party is required to pay his or her own costs and attorney fees.

¶ 43     Affirmed in part and reversed in part; cause remanded with directions.